RIGGS et al. v. CAPITAL BRICK CO. et al.

SAME v. ELDRED et ux.

(Circuit Court, D. Connecticut. March 2, 1904.)

Nos. 1,132, 1,133.

1. BUILDING AND LOAN ASSOCIATIONS—FORECLOSURE BY RECEIVERS—STATEMENT OF ACCOUNT WITH BORROWING STOCKHOLDER.

In a settlement of account between an insolvent building and loan association and a borrowing member, payments made by the latter on account of premium on his loan are to be credited as payments on the loan and not on his stock, since such premium arose out of his contract as a borrower, and not out of his contract or relationship as a stockholder. In a suit to foreclose he is to be charged with the amount received and interest, and credited thereon with the interest and premium payments made.

In Equity. Suits to foreclose mortgages.

Hasbrouck & Johnson and E. H. Rogers, for complainants.

Wm. F. Henney, George W. Klett, and W. S. Allis, for defendants.

PLATT, District Judge. The same question arises in each case, and a brief statement of the facts in the first named will disclose its nature.

The plaintiffs are the receivers of the Republic Savings & Loan Association, a corporation organized under the laws of New York, and now insolvent. The Capital Brick Company, a Connecticut corporation located at Hartford, borrowed $3,500 of the New York corporation. The shareholders of the insolvent corporation were divided into borrowers and nonborrowers. To obtain a loan, it was necessary to subscribe for such a number of shares as at their par value would equal the loan, and assign the shares of stock to the corporation as collateral security for the loan. The Capital Brick Company, therefore, subscribed for 35 shares of short-term stock, and assigned the shares as collateral. It also, on July 9, 1897, executed and delivered its bond for $3,500, and mortgaged certain real estate in Hartford to secure the same. It agreed in said bond to pay interest at 6 per cent. per annum upon said sum, payable monthly, and premiums at the rate of 40 cents upon each $100 of said principal sum of $3,500, payable monthly, until the whole of said principal sum was

¶ 1. See Building and Loan Associations, vol. 8, Cent. Dig. §§ 61, 63, 66.

paid, and dues at the rate of 50 cents per share of stock per month until said shares attain the ultimate value of $100 each, and fines and other payments provided for under the articles of association and by-laws.

In these circumstances, it is essential to determine which of the payments made by the defendants to the corporation prior to its insolvency shall be credited upon the mortgage indebtedness. I do not deem it necessary to decide whether or not the plan of settlement to be adopted shall be governed exclusively by the expressed views of the highest court in the state of New York, or by those of the highest court in the state of Connecticut. The reason for passing that contention is this: When the views of the two courts are examined and subjected to a strict analysis, the differences in the rule applicable to such matter are more than minimized; they are practically extinguished. I shall not advert, in extenso, to the lines of reasoning adopted by the two eminent tribunals, and shall expect any doubting Thomas, if such there may be, to examine the decisions on his own account.

The Connecticut court speaks with no uncertain sound in Curtis v. Granite State Ass'n, 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17. Premiums were there credited to the borrower, because in the contract they were plainly stated to be payments upon the loan, and the reasons given therefor are sound and unanswerable.

Upon examination, I can find only one authoritative utterance by the Court of Appeals of New York. 173 N. Y. 632, 66 N. E. 1115, sustains the opinion of the Appellate Division in Riggs v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177, without opinion. It is fair to say that such action leaves the Riggs v. Carter opinion, and the opinion in Hall v. Stowell, 75 App. Div. 21, 77 N. Y. Supp. 953, which is quoted approvingly and followed in Riggs v. Carter, forming the substantial basis therefor, as the law of the highest court of the state of New York.

Now, in Hall v. Stowell, supra, Strohen v. Franklin, etc., 115 Pa. 273, 8 Atl. 843, is accepted by the Appellate Division as the first of a long list of cases, which indorse the principle that, after a building and loan association has been dissolved and gone into the hands of receivers, the borrower shall repay what he has borrowed, with interest, less what he has paid on the loan, with interest. That borrower and shareholder are distinct relationships. As shareholder, he should bear his share of the loss. As borrower, he should have the benefit of the rescission of the contract, and should repay what he has received, less what he has paid on account thereof. The facts in the Hall v. Stowell Case are illuminating. Mrs. Stowell borrowed $2,250. She bid 10 per cent. premium for the loan. The loan, with premium added thereto, amounted to $2,475. She then subscribed for 24¾ shares of stock at par value of $2,475, and assigned the stock to the corporation as collateral security for the loan. Thus the premium bid was added to the stock, and the stock was to be paid for in monthly payments. The payments were to be 80 cents a share of stock until loan was fully paid. The 80 cents a share was made up of 50 cents a share, which equaled 6 per cent. interest on $2,475, and 30 cents a

share toward payment of stock. The corporation had assumed a first mortgage of $1,800, and advanced to Mrs. Stowell $450. Mrs. Stowell paid 6 per cent. interest on the entire $2,475. The corporation paid 5 per cent. interest on the first mortgage. In this situation the court made up the account in this way:

Defendant received ........................................... $450 00
She paid out, excess of interest for ten months on the $1,800.. $33 00
Also interest for ten months on premium.................... 24 75    57 75
                                                                      ————
Balance due corporation ................................. $392 25

Such method of adjustment, the court says, compels the defendant to lose the $24.75 paid originally on the stock, and also the $7.42 paid by her each month upon the stock. "She is allowed, however, all her counsel asks for her in his brief submitted upon the argument, and substantial justice ,and equity are apparently done in the premises." It will be noticed that the Hall v. Stowell Case which I am examining was a submission to the Appellate Division under section 1279, Code N Y., and that the main contention therein was upon the question of usury.

In Breed v. Ruoff, 173 N. Y. 341, 66 N. E. 5, the Court of Appeals refuses to sustain the action of tl , Trial Court, which had been affirmed by the Appellate Division. The Trial Court refused to assist the receivers to gather in the assets, but there is not one word in the opinions, below or above, showing what portion of the estate was to be sold under the mortgage, and the case is distinctly sent back, so that the trial court may "ascertain the amount, if any, due upon said mortgage."

In Riggs v. Carter, 77 App. Div. 581, 79 N. Y. Supp. 178, among the facts set forth before the opinion itself is reached, and upon which, presumably, the opinion is based, it appears that on September 18, 1897, Carter executed a *bond* and, *mortgage*. The *mortgage* contained a condition as follows: "* * * And a monthly premium of $4.80 *for the cash advanced on the maturity value of said share.*" (The italics are my own.)

Neither the Trial Court nor the Appellate Division vouchsafes to explain why they devote their attention to the language which is found in the matter descriptive of the obligation, rather than to the wording of the obligation itself, and it seems unimportant to inquire.

The vital point is this: The court finds, and the Appellate Division so interprets that finding, that nothing except interest was paid by the defendant, which was referable to the loan itself. In other words, the lower court found as a fact that under the contract between the parties the premiums were payments upon the stock.

It is true that I am dealing with the same corporation which the trial court had before it in Riggs v. Carter, but I am unaware of any rule which compels me to agree with that court in its finding, even if the facts were identical. The facts, however, are not identical. The Connecticut mortgage fails to contain the descriptive language quoted by the New York courts. The bond explains what the real contract between the parties was. That is identical in its terms in both cases. If the description thereof in the Connecticut mortgage were

the same as in the New York mortgage, I should be forced to look to the terms in which the parties themselves expressed their contract, rather than to an explanation thereof made by some conveyancer.

The premiums in our cases are, beyond the shadow of a doubt, referable to the loan itself; and so we find, at last, that in the matter at issue there is no difference between the highest courts, and any fancied difference grows out of one of two things: Either a misinterpretation of law in the lower New York court, by assuming that what some one has said the parties agreed to do expresses their intention, rather than what appears in the very paper in which the intention is set forth in plain words; or a finding of fact based upon some evidence which is not accessible to our eyes in the printed report of the New York case.

If I were driven to the point, however, I should not hesitate to say that the question before me is one of general law, over which the federal judiciary is entitled to hold an independent judgment. I could not sacrifice my own sense of equity and fair dealing at the behest of any judicial body, except those which I am bound in law to obey. And as I say this I feel it a duty, as well as a privilege, to express my sincere respect for and abiding faith in the court of last resort in the state of New York. My loving respect for the Supreme Court of my own state, as well as for its individual members, does not, I fervently hope, need expression; it exists, and is absolute, complete, and unreserved. I am comforted with regard to my independent judgment in this matter to find that the same point has been reached by a large number of courts of last resort in different states, all of high worth and esteem.

My attention has been called to a few instances in which the federal courts have followed the rule of settlement of the domiciliary state, but those are cases in which the local judge was dealing with an ancillary receivership, and the principal receivership arose under a federal appointment. Naturally, and for obvious reasons, the rule of settlement adopted by the court making the main appointment was followed by the court which dealt with the ancillary matter. In the case at bar the main receivership is the creation of a tribunal of a sister state. It would be pleasant to co-operate in producing a homogeneous rule of settlement for all borrowing shareholders in this dissolved corporation, but I cannot sacrifice my settled convictions to produce such a result, and I beg to suggest to the counsel for the receivers that our state tribunals were at their disposal, and, having begun in a neighboring local forum, it was not illogical for them to continue their efforts in the same direction.

Towle v. Am. B. & L. Ass'n (C. C.) 61 Fed. 447, can, I agree, be distorted into a sanction for the plaintiffs' contention, but I must beg leave to doubt whether Judge Grosscup himself would sustain the position which is required herein; and, beyond that, I am unable to agree with his original premise, and his general conclusion is somewhat isolated. I do not think that these associations, especially when dissolved by failure of the scheme, are in any reasonable sense of the term business copartnerships.

The association is a corporation, with corporate rights, and the members are the stockholders. As stockholders, pure and simple, the members have a distinct contractual relation. When a member becomes also a borrower, he makes a separate and distinct contract. He plays a double part, it is true, which is frequently called a dual role, but each part is distinct, and clearly defined. The duties and advantages of the one relation do not in any sense add to, diminish, or change the duties and advantages pertaining to the other.

From this viewpoint it becomes appropriate to remark that the doings of a building and loan association are sui generis. The wrecks of such corporations along the shores of the judicial tribunals tend very strongly to sustain the conviction that the plan upon which they were organized was Utopian, and slightly lacking in plain, practical, ordinary common sense. The words in which to dress such a plan were inevitably vague and hazy, and it is therefore not surprising that the painful absence of set terms and clear expressions has led the judicial interpreters in the earlier stages of the litigation into a veritable quagmire of opinions. But whenever and wherever a clear distinction exists in the contracts between payments to be applied to loans and payments to be applied to stock, it is a simple matter to carry out the intention of the parties as expressed in their contract, and this position in these latter days has been consistently and uniformly taken by the courts.

If in any case the scheme materializes, it is true that a time must come when the reduction of the loan on the one hand, and the payments toward stock on the other, will bring the parties to a point where one hand washes the other, and the complicated figuring will be wiped from the slate, the stock becoming full paid and the loan extinguished. Such a chimerical moment, however, is part of the Utopian dream, and when death arrives, as it naturally must, before maturity, the attempt at legerdemain vanishes into the air from which it was evoked, and the parties are thrown back upon and into their original undertaking.

It follows, from what has been said, that I am unable to accept the English plan of settlement, which has been followed occasionally in the past on this side of the ocean. I am in hearty accord with the plan adopted by many eminent courts, among which the Supreme Court of my own state is not the least. The borrowers should be charged with the amounts which they borrowed, with 6 per cent. interest thereon, and from those sums should be deducted in each instance the interest and premiums which they have paid, applied according to the rule of partial payments. The balance found will be the amounts due the complainants. It has been agreed that the time for redemption shall be three months.

Let decrees be entered in each case in accordance with this opinion.