# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### FARMERS' & MERCHANTS' BANK OF PHŒNIX, ARIZ., v. ARIZONA MUT. SAVINGS & LOAN ASS'N et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915. Rehearing Denied March 8, 1915.)

No. 2425.

1. EQUITY ☞429—DECREE—EXPIRATION OF TERM—SUBSEQUENT VACATION.

After the end of the term at which a decree is rendered it becomes an absolute finality; the court having no power to change, revise, or grant other relief against it in the cause or proceeding in which it was rendered, except that it may do so for errors of law appearing on the face of the decree which rendered it void.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1020–1033; Dec. Dig. ☞429.]

2. EQUITY ☞430—DECREE—VACATION AFTER TERM—INVALIDITY.

Where a decree in a stockholder's action to recover the assets of an insolvent corporation was not within the issues presented by the bill and erroneously awarded a personal judgment in favor of certain stockholders, who were assuming to act for all, excluding from its benefits all other stockholders, who if they had knowledge of the proceeding would be entitled to assume that the suit would be carried to a decree which would protect all stockholders alike, the court after the term was justified in setting it aside and entering a new decree, rectifying the errors and providing for a just distribution of the corporation's assets.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1034–1047; Dec. Dig. ☞430.]

3. EQUITY ☞460—BILL OF REVIEW—PETITION OF INTERVENTION.

Where a decree in a stockholder's suit for the benefit of the corporation and all other stockholders similarly situated was erroneous on its face and granted relief not within the issues, a petition of intervention, filed within the time allowed for taking an appeal, seeking to set aside the decree, could be properly sustained as a bill of review.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1117–1123; Dec. Dig. ☞460.]

4. EQUITY ☞454—BILL OF REVIEW—APPLICATION TO FILE.

Permission of the court is not required to file a bill of review to set aside a decree for errors of law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 1110; Dec. Dig. ☞454.]

5. EQUITY ☞114—INTERVENTION—RIGHT TO INTERVENE.

Where a suit was brought for the benefit of all stockholders of an insolvent corporation, including petitioners, though they were not named

---

as parties, it was not an abuse of the trial court's discretion to deny their application for leave to intervene.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 275–279; Dec. Dig. ☞114.]

6. APPEAL AND ERROR ☞95—ORDERS APPEALABLE—RIGHT TO INTERVENE.

An order denying petitioner's right to intervene is not appealable, unless it is a practical denial of certain relief to which intervener is fairly entitled, and which he can only obtain by intervention, and the permission to intervene is not discretionary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 649–654; Dec. Dig. ☞95.]

Appeal from the District Court of the United States for the District of Arizona; Wm. W. Sawtelle, Judge.

Suit by Charles W. Clark against the Arizona Trust Company, in which the Arizona Mutual Savings & Loan Association and others were permitted to intervene. From a decree marshaling the assets and providing for the distribution of assets of the Loan Association, and denying the application of the Farmers' & Merchants' Bank of Phœnix, Ariz., to intervene (217 Fed. 640), it appeals. Affirmed.

Charles W. Clark, a stockholder in the Arizona Mutual Savings & Loan Association, hereinafter called the Loan Association, on July 15, 1912, filed a bill of complaint for that association and its stockholders, alleging that he was one of the many stockholders of the Loan Association; that the officers of that association, knowing it was insolvent, without the knowledge of the plaintiff and many others similarly situated, entered upon a fraudulent and corrupt agreement with certain persons for the organization of the Arizona Trust Company for the purpose of taking over the assets and property of the Loan Association, and that in consideration of 1,300 shares of the stock of the Trust Company, the Loan Association agreed to deliver to the Trust Company all of its assets and property; that the scheme was unlawful and corrupt; that the assets of the Loan Association were impressed and charged with a trust for the benefit of its stockholders; that the officers of the Trust Company dealt with the assets of the Loan Association for their own private and selfish ends, and without the slightest benefit to the Loan Association or the stockholders thereof; that the said transfer of the assets was fraudulent and void; that at the time of the transfer the Trust Company had no assets or property; that the 1,300 shares of stock in that company had no value whatever; that the assets of the Loan Association were intermingled with the assets of the Trust Company in an attempt to obtain the same at a sacrifice of the rights of the stockholders of the Loan Association; that to determine the rights and equities of the complainant and other stockholders an accounting between both corporations and the officers and directors thereof was necessary; and that the complainant's bill was brought in his own behalf and in behalf of all others similarly situated. The prayer of the bill was that the transactions between the corporations be declared void, that a restitution of the assets of the Loan Association be decreed, that an accounting be had between the corporations, and between the Loan Association and its stockholders, that a receiver be appointed for the Loan Association, and that the rights and equities of the complainant and all the parties therein concerned be determined, and the affairs of the Loan Association be wound up and its assets distributed.

Thereafter other petitions in intervention were filed by intervening stockholders, and on February 27, 1913, a decree was entered, finding that the transfer of the assets of the Loan Association to the Trust Company was unlawful and invalid, and not binding upon the interveners, or upon the other outstanding and nonexchanging stockholders in the defendant Loan Association, and finding that the Trust Company had so confused and mingled

the assets received from the Loan Association that it was impossible to direct and enforce a retransfer of all of the original properties and assets so derived by the Trust Company and the profits thereon. In the decree the court set forth a list of stockholders of the Loan Association who had not exchanged their stock for stock in the Trust Company, together with the amounts each had paid in to the Loan Association, and also set forth a list of the interveners who had exchanged their stock, together with the amount which each had paid into the Loan Association, and decreed that all said sums be repaid to said stockholders and interveners, and that the assets in the hands of the receiver, if any remained after paying off in full the moneys so paid by the said stockholders into the Loan Association, remain in the Trust Company. On July 15, 1913, a large number of other stockholders of the Loan Association intervened, and petitioned that the decree of February 27, 1913, be set aside, and that they be allowed to intervene. They alleged in their petition that they had been stockholders of the Loan Association, and had been induced to surrender their stock therein by false and fraudulent representations made to them by the Trust Company and the Loan Association, and that they had no knowledge of the appointment of the receiver, and were not aware that the corporations were in the hands of a receiver or insolvent until some time in the month of February, 1913; that they were kept in ignorance of the affairs of the company; that no notice was given them of the suit of Clark or the interveners against the corporations until after the final decree of February 27, 1913; and the petitioners prayed that the decree of February 27, 1913, be set aside, and the case reopened, and that they be allowed to intervene to the end that their rights might be protected.

On July 29, 1913, the appellant herein, the Farmers' & Merchants' Bank of Phœnix, filed a petition in intervention, alleging that on July 12, 1913, it had obtained a judgment in the superior court of the state of Arizona for Maricopa county, against the Trust Company, for the sum of $18,500; that at the time when the judgment was entered the assets of said corporation were in the hands of a receiver; and it prayed that the receivership be extended for its benefit, and for the benefit of other judgment creditors of the Trust Company; and the petition proceeded to allege that the approximate value of the assets of both corporations was in the neighborhood of $70,000, that the liens established and fixed by the final decree of February 27, 1913, were about $50,000, and that, in addition to the assets then in the hands of the receiver, assets of the Trust Company to the extent of many thousand dollars should be recovered by it from the former officers and directors, who, it was alleged, had made unlawful appropriation of the money to their own use in large sums, and had also made unlawful preference payments to certain stockholders while the companies were insolvent, and had pledged assets of the Loan Association to secure a loan to the Trust Company, and the petition set forth other acts and misconduct of the officers of the Trust Company for which it was said they were liable to that company in large amounts.

On March 12, 1914, the court entered another decree setting aside the decree of February 27, 1913, holding that that decree had been entered without notice and opportunity to the stockholders to present their claims to the assets of the company, or to show their interest in the property, and without referring the case to a master, as prayed in the bill, to determine the rights and equities of all parties concerned, holding that the decree was erroneous in that the stockholders named therein were relieved from all participation in any losses of the Loan Association, and giving them a lien upon its assets to the exclusion of other stockholders, that the decree was not responsive to the pleadings, that, so far as it attempted to vest the title of the assets of the Loan Association in the Trust Company, it was beyond the issues of the case made by the pleadings, and the court exceeded its powers on the pleading and proof when it gave a lien to the intervening creditors on the assets of the Loan Association in the hands of the Trust Company for the amount they had paid in, and compelled the parties who were interested in the assets of the Loan Association to bear all the losses

incurred by that Association in the conduct of its business; and the decree ordered that all assets which had been transferred to the Trust Company by the Loan Association be restored to the Loan Association or to its receiver, that all contracts, conveyances, or agreements made by the Loan Association or its agents or officers be vacated and annulled, that the Trust Company transfer and deliver to the receiver all property received by it from the Loan Association, or received by it from the use and investment or other disposition of the. assets of the Loan Association, that the cause be referred to a master to take an accounting between the two corporations, to ascertain the amount due from the Loan Association to each of its stockholders, that notice be given requiring all persons claiming to be stockholders in said Loan Association to file their claims with proof, that the master report as to the rights of the Loan Association in any assets now in the hands of persons not parties to the suit, and to report what sum of money or other assets of the Loan Association were unlawfully used by any officer of either corporation. It was further ordered that all petitioners for intervention be allowed to intervene and present their claims to the master for adjudication.

From that decree, and from the order of the court below denying it the right to intervene, the Farmers' & Merchants' Bank appeals.

Paul Renau Ingles, of Phœnix, Ariz., for appellant.

George J. Stoneman and Reese M. Ling, both of Phœnix, Ariz., for Arizona Mutual Savings & Loan Ass'n and others.

R. E. Morrison, of Prescott, Ariz., and J. E. Morrison, Benton Dick, and O. T. Richey, all of Phœnix, Ariz., for appellees Waring and others.

William M. Seabury, of Phœnix, Ariz., for appellees who are interveners named in decree of February 27, 1913.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The decree of February 27, 1913, denies the rights of a large number of stockholders who are not named therein and unjustly distributes the money of the insolvent Loan Association contrary to the pleadings and the purpose of the suit. The decree of March 12, 1914, rectifies the errors of the former decree and provides for a just distribution of the assets of the corporation. The appellant says that the latter decree should not stand, that it is a nullity, because its effect is to set aside a decree after the expiration of the term at which it was rendered, and that it operates to the prejudice of the appellant, because the latter had by its judgment acquired a vested property right in the surplus remaining in the possession of the Trust Company after the execution of the decree of February 27, 1913, and that it gave to the stockholders of the insolvent Trust Company, at whose instance the original decree was set aside, rights in the assets of that company prior and superior to those of the appellant as a judgment creditor.

[1] It is unnecessary to cite authorities to the general rule that after the expiration of the term at which a judgment is rendered the judgment becomes an absolute finality, forever binding upon the parties and their privies, and the court is without power to change, revise, or grant other relief against it in the cause or proceeding in which it was rendered. But there are exceptions to the general rule, and one is the

case in which such errors of law appear upon the face of the decree as to render it void. In the present case the original suit was brought by a stockholder of the Loan Association, an insolvent corporation, for the benefit of himself and all similarly situated, to secure a proper winding up of the corporation, and a distribution of its assets, on the ground that the officers of that corporation refused to act for the benefit of the stockholders, and had entered into a scheme for the fraudulent disposition of the Loan Association's assets. In such a suit all the stockholders of the Loan Association were entitled to a pro rata distribution of the assets, and all were required to share pro rata in the losses, and all were obligated to join in the payment of attorney's fees allowed by the court in such proceedings. The decree of February 27, 1913, does none of these things. It takes no accounting. It arbitrarily decrees the repayment to certain named stockholders of the amounts which they had paid in to the Loan Association, regardless of the losses, debts, and obligations of the Loan Association, excludes from the benefits of the decree a large number of stockholders who had not appeared therein, and to whom no notice had been given, and leaves the remainder of the Loan Association's property in the hands of the Trust Company, notwithstanding that the bill alleged, and the court found, that all the assets of the Loan Association had been fraudulently transferred to the Trust Company.

[2] In brief, the decree is the entry of a personal judgment in favor of certain stockholders who were assuming to act for all, and it excludes from its benefits all other stockholders who, if they had knowledge of the proceeding, may be taken to have assumed that the suit would be carried to a decree in pursuance of its avowed purpose to protect all stockholders alike. That decree was not within the issues presented by the bill. Money recovered in such a suit belongs to all the stockholders, and not to the complaining stockholder. In Lewis v. Clark, 129 Fed. 570, 573, 64 C. C. A. 138, 141, this court said:

"The shareholders in associations of this character are not in the ordinary sense creditors, and if deemed creditors in any sense they are necessarily subject to all equities existing between themselves."

In Towle v. American Bldg., L. & Inv. Soc. (C. C.) 61 Fed. 446, Judge Grosscup, discussing the right of a stockholder in an insolvent building and loan association, said:

"Th first question is whether he is entitled to a credit for the amount of assessments paid upon his stock. I think not. Such a credit practically would be paying par on his stock, a preference over other stockholders, to which clearly he is not entitled. Neither do I think he should be allowed credit for fines paid in. They are the result of his personal delinquencies, and, eo instante, become the common property of all the members of the association."

Although the record contains no allegation that loans were made to the stockholders of the Loan Association, we are authorized to assume, in view of the purposes of the association, that such loans had been made and were outstanding at the time of the transfer of the assets to the Trust Company. No account is taken in the decree of February 27, 1913, of the rights and equities of the parties arising out of such

loans. In Riggs v. Capital Brick Co. (C. C.) 128 Fed. 491, it was held that, in the settlement of accounts between an insolvent building and loan association and a borrowing member, payments made by the latter on account of premium on his loan are to be credited as payments on the loan, and not on his stock, since such premium arose out of his contract as a borrower, and not out of his contract or relationship as a stockholder. And in Gunby v. Armstrong, 133 Fed. 417, 66 C. C. A. 627, it was held that where a building and loan association becomes insolvent, and proceedings are instituted for winding up its affairs, the court, as a matter of necessity, may require the borrowing stockholders to pay forthwith amounts due from them, although they are not in default and their obligations are not due by their terms.

In Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464, the question involved was the jurisdiction of a court, in a stockholders' suit brought to secure the reconveyance of personal property from another corporation, to enter a judgment adjudging the return of real property as well as the personal property involved in the issues. The court said:

"The rule is universal that where a defendant appears and responds only to the complaint as filed, and no amendment is made thereto, the judgment is conclusive only so far as it determines matters which by the pleadings are put in issue."

And the court held that, to constitute jurisdiction to adjudicate concerning the subject-matter in a given case, there are three essentials. The court said:

"First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment."

In Standard Oil Co. v. Missouri, 224 U. S. 270, 32 Sup. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936, the court said:

"The federal question is whether, in that court, with such jurisdiction, the defendants were denied due process of law. Under the fourteenth amendment they were entitled to notice and an opportunity to be heard. That necessarily required that the notice and the hearing should correspond, and that the relief granted should be appropriate to that which had been heard and determined on such notice, for even if a court has original general jurisdiction, criminal and civil, at law and in equity, it cannot enter a judgment which is beyond the claim asserted, or which, in its essential character, is not responsive to the cause of action on which the proceeding was based."

In view of the foregoing considerations, it would seem that there is ground for holding that the court below was not without jurisdiction, either upon its own motion or upon the suggestion of parties interested, to set aside its former decree, notwithstanding that the term at which it was rendered had expired, and to enter the decree appropriate to the issues, which ought to have been entered in the first instance

[3] But, even if the errors of law are not such that they might thus have been corrected, the case is clearly one in which those results could have been obtained by a bill of review, and for that purpose we think that the petition filed on July 15, 1913, which was filed within the time allowed for taking an appeal from the prior decree, may properly be regarded as a bill of review.

[4] As the errors complained of and pointed out were all errors of law, there was no necessity for first obtaining permission of the court to file such a bill. Ricker v. Powell, 100 U. S. 104–109, 25 L. Ed. 527; Lewis v. Holmes, 194 Fed. 842, 116 C. C. A. 408. The petitioners, although they were not named as parties to the original suit, were in equity parties thereto, for the reason that the suit was brought for the benefit of all stockholders. They were denied the relief to which they were entitled and consequently were aggrieved by the decree. Their petition was addressed to the court, it was duly verified, and it pointed out specifically the errors of the former decree, and contained a prayer for a decree in accordance with the rights of all parties, a decree such as was thereafter rendered by the court.

In Kaw Drainage Dist. v. Union Pac. R. Co., 163 Fed. 836–838, 90 C. C. A. 320, 322, there was a similar petition to correct a decree. The court said:

"We think the petition presented to the trial court may be regarded as a bill of review. That it was called a petition does not determine its true character, and that it was informal in other respects may be disregarded, in the interest of substantial justice. It was filed within the time allowed for a bill of review, was addressed to the judges of the Circuit Court, and contained a statement in ample detail of the parts of the decree objected to, with the grounds of objection, followed by a prayer for specific and general relief and a verification."

And the court cited Knox v. Columbia Liberty Iron Co. (C. C.) 42 Fed. 378, in which a petition for rehearing was treated as a bill of review, because the relief sought could only be granted upon a bill of that character.

[5] We find no error for which the decree of March 12, 1914, should be reversed. In that decree the rights of the appellant are fully protected, and provision is made for the presentation of its claim to the master in chancery to be paid out of the available funds which may remain in the Trust Company. Provision is also made therein for the ascertainment and recovery of assets in the hands of persons not parties to the suit. There was no abuse of the discretion of the court below in denying the appellant's application for leave to intervene.

[6] An order denying the right to intervene is not appealable unless it is the "practical denial of certain relief to which the intervener is fairly entitled, and which he can only obtain by intervention, and where the intervention is not discretionary with the chancellor." Credits Commutation Co. v. United States, 177 U. S. 311, 20 Sup. Ct. 636, 44 L. Ed. 782; Ex parte Cutting, 94 U. S. 14; Thomasson v. Guaranty Trust Co., 159 Fed. 126, 86 C. C. A. 514; United States Trust Co. v. Chicago Terminal T. R. Co., 188 Fed. 292, 110 C. C. A. 270.

The decree of March 12, 1914, is affirmed.