KLINE v. ARIZONA MUT. SAVINGS & LOAN ASS'N et al.

(Circuit Court of Appeals, Ninth Circuit. August 7, 1916.)

No. 2692.

BUILDING AND LOAN ASSOCIATIONS &=42(4)—INSOLVENCY AND RECEIVERS— PREFERENCE IN DISTRIBUTION OF ASSETS.

Complainant, a stockholder in a mutual loan association, with knowledge that it was insolvent and had transferred all of its assets to a trust company organized for the purpose, refused to exchange his stock for that of the trust company, but sold it to the latter for its book value, taking the note of the company, secured by a pledge of mortgage notes acquired from the loan association. Shortly afterward, at suit of other stockholders of the association, the transfer of its assets was adjudged fraudulent and void, and they were ordered returned for the benefit of the creditors and stockholders of the association, and a receiver was appointed for both corporations to carry out the decree and wind up their business as insolvents. Held, that complainant was not entitled in equity to retain the assets pledged to secure payment for his stock, but must come in and share ratably with other stockholders.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 63, 66, 86; Dec. Dig. &=42(4).]

Appeal from the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Suit in equity by Arthur A. Kline against the Arizona Mutual Savings & Loan Association, the Arizona Trust Company, and Sims Ely, receiver of such corporations. Decree for defendants, and complainant appeals. Affirmed.

The bill in this case, after alleging the jurisdictional facts and the organization under the laws of the state of Arizona of the defendant corporations, alleges, among other things, that on the 2d day of March, 1912, the Arizona Trust Company, hereinafter called the Trust Company, executed to the complainant its promissory note for $5,532, with certain specified interest, to secure which it at the same time indorsed in blank and delivered to the Valley Bank of Phœnix, Ariz., "in pledge for the use of said complainant," certain specified notes secured by mortgage on real estate in Arizona, each of which notes and mortgages were so delivered as collateral security for the payment of the $5,532 note above mentioned, all of which, with the exception of $200 of the interest, remains due and unpaid from the Trust Company to the complainant.

The bill further alleges that, the note executed by the Trust Company to the complainant not having been paid when due, the Valley Bank then delivered to the complainant all of the collateral notes and mortgages securing that note, all of which the complainant still holds and owns; that the Trust Company subsequently, after demand made, refused to pay its said note to the complainant, and that thereafter, at the suit of one Charles W. Clark against the Trust Company and the Arizona Mutual Savings & Loan Association, hereinafter referred to as the Loan Association, and which suit is still pending in the court below, the defendant hereto, Sims Ely, was by the said court duly appointed receiver of the assets of the Loan Association and of the Trust Company, who duly qualified as such receiver, and in that capacity claims the right of possession and control of the collateral security so held by the complainant as aforesaid, which collaterals the complainant, prior to the institution of the present suit, offered to deliver to the defendant receiver upon the payment of the note executed to the complainant by the Trust Company.

After alleging that the present suit is brought by permission of the court below, the bill prays, among other things, a decree directing the payment by the Trust Company and its receiver of the $5,532 note, with interest, and decreeing that the lien claimed by the complainant on the collateral security

above mentioned is a valid lien, and that unless the complainant's note, with interest, is paid by the receiver within a time to be fixed by the court, all of the said collateral security be ordered sold for that purpose, and for general relief.

The answer of the receiver of the two corporations denies that the complainant is the owner or entitled to the possession of the alleged collaterals, and in connection with that denial alleges that on the 27th day of February, 1913, by a decree entered in the Clark suit, "it was found and determined that at the time of the attempted transfer by the Arizona Mutual Savings & Loan Association to the Arizona Trust Company of the assets of said the Arizona Mutual Savings & Loan Association, including the assets involved in this section [action], the Arizona Trust Company, defendant herein, had no right, power, or authority to receive from said the Arizona Mutual Savings & Loan Association any of said assets, and that said attempted transfer was, for the reasons set forth in said decree, void and of no effect"; that by a subsequent modification of that decree, made on the 12th day of March, 1914, "it was further ordered, adjudged, and decreed that said attempted transfer of said assets was and is void, and in accordance with the terms of both of said decrees the receiver was directed to receive and report to the master in chancery of this court all claims against either said the Arizona Mutual Savings & Loan Association or the Arizona Trust Company, whether said claims should arise through claim as creditor [or] should arise through claim as stockholder or [of] either of said companies; that pursuant to said decree of March 12, 1914, Edwin F. Jones, master in chancery, has notified all creditors, stockholders, and claimants to present their claims to him for allowance or disallowance. And defendant further represents and shows that the complainant, Arthur A. Kline, is a claimant either as a creditor or stockholder of the Arizona Mutual Savings & Loan Association or of the Arizona Trust Company, and as such creditor or stockholder should be compelled to present his claims for allowance or disallowance to said master in chancery before being permitted to litigate his claims to the assets involved in this proceeding."

The answer of the receiver further alleges that the assets which are the subject of the present suit are, "under the terms of each of said decrees hereinabove mentioned, assets properly belonging to the Arizona Mutual Savings & Loan Association, for the reason, as hereinabove set forth, that the officers and directors of said Loan Association were without power, right, or authority to transfer said assets to the Arizona Trust Company, and said the Arizona Trust Company, at the time when it transferred and set over, or attempted to transfer and set over, said assets to the said Arthur A. Kline as a stockholder or creditor of the Arizona Trust Company, was without right, power, or authority so to do. Defendant further represents and shows that at the time of the attempted transfer by the Arizona Mutual Savings & Loan Association to said the Arizona Trust Company, and by said the Arizona Trust Company to the said Arthur A. Kline, of the assets, being the subject of this litigation, the said Arthur A. Kline was a stockholder in the Arizona Mutual Savings & Loan Association, which Loan Association was by the terms of both decrees hereinabove mentioned at the time of said attempted transfers adjudged and declared to be an insolvent association, and that the said Arthur A. Kline and all persons holding under or through him, or claiming any right, title, or interest in said assets, is subrogated to the rights which the said Arthur A. Kline at the time of said transfer held, owned, or enjoyed as a stockholder in said insolvent Loan Association. Wherefore defendant alleges that complainant, Arthur A. Kline, is not the owner of any of said securities or assets, being the subject of this litigation, except in so far as it may be determined by the master in chancery hereinabove mentioned he shall be the owner to the extent of his proportionate interest as a stockholder in the assets which may be marshaled and collected by the master and receiver of said insolvent Arizona Mutual Savings & Loan Association, and distributed to the stockholders therein."

After trial, the court below, upon the evidence introduced by the respective parties, entered a decree adjudging in effect that the complainant take nothing by the suit, and that "he is not the owner of, nor entitled to possession of, any of the securities or assets, being the subject of this litigation, except in

so far as it may be-determined by the master in chancery appointed in equity cause No. 53 (the Clark suit) that the said Arthur A. Kline shall be the owner of stock either in the Arizona Trust Company or the Arizona Mutual Savings & Loan Association, to which extent complainant shall be entitled to his proportionate interest as such stockholder in any of the assets of either of said corporations which may be marshaled and collected by the master appointed in said equity cause No. 53 and Sims Ely, receiver."

It is from that decree that the present appeal is taken.

Thomas Armstrong, Jr., Ernest W. Lewis, and R. L. Morgan, all of Phœnix, Ariz., for appellant.

George J. Stoneman, of Phœnix, Ariz., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The suit of Clark referred to in the statement has been twice before this court —the first time on the petition of a judgment creditor of the Trust Company to intervene, upon the alleged ground that the modification of the decree of February 27, 1913, made by that of March 12, 1914, was a nullity, and operated to the prejudice of the petitioner (appellant in this court) "because the latter had by its judgment acquired a vested property right in the surplus remaining in the possession of the Trust Company after the execution of the decree of February 27, 1913, and that it gave to the stockholders of the insolvent Trust Company, at whose instance the original decree was set aside, rights in the assets of that company prior and superior to those of the appellant as a judgment creditor." Farmers' & Merchants' Bank v. Arizona M. S. & L. Ass'n, 220 Fed. 1, 4, 135 C. C. A. 577. In affirming the decree in that cause we said, among other things:

"In that decree the rights of the appellant are fully protected, and provision is made for the presentation of its claim to the master in chancery to be paid out of the available funds which may remain in the Trust Company. Provision is also made therein for the ascertainment and recovery of assets in the hands of persons not parties to the suit."

The second time the cause was brought here was on application for a writ to the judge of the court below, prohibiting that court and the judge thereof from modifying or exercising any jurisdiction over the decree theretofore entered in that cause on the 27th day of February, 1913, and directing the annulment and vacation of the decree of March 12, 1914, modifying the previous decree of February 27, 1913. In disposing of that application, this court thus stated the facts, pleadings, and proceedings in the trial court:

"The cause was instituted by Charles W. Clark, of the state of California, against the Arizona Mutual Savings & Loan Association and the Arizona Trust Company, both of the state of Arizona. For convenience the defendants will be called, respectively, the Loan Association and the Trust Company. Clark is and was a stockholder in the Loan Association, and complains that the association is insolvent, but that the officers and directors thereof have failed and neglected to dissolve the corporation, to liquidate its obligations, or to wind out its business and distribute its assets, and further that, without the knowledge or consent of complainant and many others similarly situated, such officers and directors entered into a corrupt and fraudulent agreement with certain persons, whose names are unknown, whereby it was agreed and understood that the defendant Trust Company should be organized for the purpose of taking over the assets of the Loan Association, and that thereafter, when said Trust Company was so organized, a pretended

and fraudulent agreement was entered into, whereby the Loan Association sold and transferred to the Trust Company all of its assets and property, including the good will, in consideration that the Trust Company should issue and deliver 1,300 shares of its capital preferred stock, of the par value of $100 per share, to the Loan Association, it being understood that the Loan Association would thereupon suspend its operations and cease doing business; that accordingly, in the latter part of April or first of May, 1911, the Loan Association pretended to sell, assign, transfer, and set over to the Trust Company all of its said assets, notes, mortgages, and other securities of every kind and character, since which time the Trust Company has exercised exclusive control and dominion over, and has dealt with, said assets and securities as its own property, and that the Loan Association, or its officers and directors, or a majority of its stockholders, were possessed of no right, power, or authority so to convey or dispose of the assets of the association.

"It is further charged that, by reason of such fraudulent transfer of the assets and securities of the Loan Association, the said Trust Company, its officers and directors, became and were trustees of such property for the benefit of the complainant and other stockholders similarly situated, but that, in furtherance of their fraudulent scheme, they sought to induce the stockholders in the Loan Association to exchange their stock for stock in the Trust Company, and did so induce many of them to make or agree to make such exchange; that an intimate relationship of trust and confidence exists between the officers of the Trust Company and the officers of the Loan Association, and that the officers and directors of both said defendants have willfully violated their duties and the said trust and confidence which should have existed between them and complainant and other stockholders similarly situated, in that the officers and directors of the Trust Company have dealt with such property and assets for their own private and selfish ends and purposes, and without benefit to complainant and other stockholders similarly situated, and have used such assets and property of the Loan Association in the exploitation of various speculative enterprises in which the Trust Company has engaged, and have commingled such property with the Trust Company's own and after-acquired property, so that it will be difficult, if not impossible, to segregate the same; that it would be and is useless and futile for complainant and other stockholders similarly situated to demand of the officers and directors of the Loan Association to proceed for the recovery of the assets unjustly appropriated by the Trust Company, for the reason that it would require said officers and directors to repudiate their own acts, and hence the complainant (employing the language of the bill) 'brings this bill in equity in his own behalf and in behalf of all others similarly situated, to the end that the transactions herein set forth as heretofore made between the defendants above named be annulled and declared void and held for naught, and to the end that an accounting may be had between the two defendants above named, and between the defendant Loan Association and your orator and others similarly situated, and to the end that the property and assets of the defendant Loan Association, in which your orator and others similarly situated has and have respectively an interest, may be conserved and protected, and that a receiver of the defendant Loan Association may be forthwith appointed, with full powers to acquire and take possession of and to marshal the assets of the defendant Loan Association in whosesoever hands the said assets and properties may be, and to ascertain the amounts due and owing from the said defendant Loan Association to your orator and other stockholders thereof similarly situated, and that such sums of money, if any, as may be due and owing to the defendant Loan Association be ascertained and determined, and that your orator and others similarly situated, who may desire to intervene herein in support of this bill of complaint, may be permitted so to do, and that your orator and such persons as may intervene, as aforesaid, may be awarded such other relief as to a court of equity may seem proper.'

"The complainant prays that the transactions complained against be annulled, that a restitution of the assets of the Loan Association be had, that an accounting between the defendants be had and taken, and also between the Loan Association and complainant and other stockholders similarly situated, that a receiver be appointed, and that the affairs of the defendant Loan As-

sociation be wound up, and its assets distributed to those found entitled thereto, and for general relief.

"Later there was filed in court a petition of intervention by 39 persons, 4 of whom claimed to be stockholders in the Loan Association, and the others claimed to have been stockholders in such association, but had previously exchanged their stock for stock in the Trust Company. All these, in support of their petition to intervene, refer to complainant's bill, and make all the allegations thereof part of their petition, except so much of paragraph 3 as relates exclusively to the complainant. It is further alleged that all the petitioners who had exchanged their stock in the Loan Association for stock in the Trust Company were induced to do so by fraud and deceit practiced on the part of those officers and directors of the two companies, and others in collusion with them, who were responsible for the sale and transfer of the Loan Association's assets to the Trust Company, and that the transactions whereby such stock was exchanged were fraudulent and void; the petition setting out at great length and in detail the specific facts constituting the fraud. The petitioners further show the commingling of the assets of the two companies, and the insolvency of the Trust Company also, and pray that they and each of them be permitted to intervene, and as to those of them who have exchanged their stock that such exchanges be rescinded as fraudulent and void, and that they be reinstated to their former holdings, and otherwise all demand relief as by the complainant's bill. Some time later three other petitions for intervention were filed, by nonexchanging and exchanging stockholders to the number of 77, with like allegations as in the preceding, and demanding like relief.

"After answer and replication, the court made and entered its decree, finding:

"First. That certain of the interveners were still stockholders in the Loan Association.

"Second. That certain others of the interveners had exchanged their stock in the Loan Association for stock in the Trust Company.

"Third. That the Loan Association was, about the month of March, 1911, insolvent, and that the Trust Company was organized by those in control of the Loan Association, the purpose of said organization being to take over the assets and properties of the Loan Association and to engage in business for itself.

"Fourth. That as to interveners and other nonconsenting stockholders of the Loan Association, who had not transferred their stock for stock in the Trust Company, the said transfer of assets and property was unlawful and invalid, and not binding upon them.

"Fifth. That pursuant to such purpose all the assets and properties of the Loan Association were transferred to the Trust Company, which latter company and its officers have dealt with them as their own, and have confused and inseparably commingled such assets and properties with those of the Trust Company, so that it is impracticable and impossible to direct and enforce a retransfer of the assets and properties of the Loan Association, and the profits thereof.

"Sixth. That the exchanging stockholders were induced to make the exchange of their stock through false representations, and it is decreed that such stockholders, and each of them, be restored to their original status as stockholders in the Loan Association.

"Seventh. And to the end that the rights of all of the interveners herein and of the outstanding stockholders in the defendant Loan Association, who never exchanged their stock therein for stock in the defendant Trust Company, may be adequately preserved and protected, the court hereby confirms to the defendant Trust Company, and adjudges that complete title is vested in the defendant Trust Company of, in, and to all of the assets and properties of whatsoever kind or nature heretofore owned by the defendant Loan Association, subject only to the lien and charges hereinafter specified.

"Eighth. And for the further protection of the rights of the said interveners and the said stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the defendant Trust Company, the court adjudges and determines that all of the assets and properties now or hereafter owned or acquired by the defendant Trust Company be, and they

hereby are, impressed with the trust and lien in favor of each of the said interveners named herein to the extent and amount set opposite the names of each, and in favor of the stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the Trust Company for the amounts heretofore paid in by such last-named persons in the following names and amounts [setting them out].

"The remaining paragraphs deal with directions to the temporary receiver, the disposition of counsel's and receiver's compensation, and the appointment of a permanent receiver for both the Loan Association and the Trust Company, with directions to such permanent receiver, after payment of certain costs and allowances, to 'pay pro rata in equal shares to each and all of the interveners herein and to the stockholders of the defendant Loan Association named in the preceding eighth paragraph such sums of money as may be received by such permanent receiver until the said interveners and the said nonexchanging Loan Association stockholders named in the preceding eighth paragraph are paid in full the amounts set opposite their respective names herein,' and the balance, if any remain, to the Trust Company.

"This decree was entered February 27, 1913. The term of court expired April 5, 1913. On that day, but after the adjournment of the court for the term, J. L. Waring and a number of others, all of whom, except one, namely John Wagner, were stockholders in the Trust Company, but had theretofore exchanged Loan Association stock for their Trust Company stock, filed a petition in intervention, adopting the allegations of complainant's bill, and also the allegations of the petitions of the preceding interveners, wheresoever applicable, and prayed that the decree of February 27, 1913, be set aside and held for naught, and that the case be referred, and that they be allowed to intervene, and for relief on a like basis as preceding interveners, but further that an accounting be had between the Loan Association and the Trust Company, and for other relief. Later, about July 15, 1913, these petitioners and many others filed another petition in the cause, seeking practically the same relief. Still later, to wit, on March 12, 1914, the cause having been brought on for hearing, the court directed a modification of the decree of February 27, 1913, and the restoration of the assets and property of the Loan Association by the Trust Company, and a vacation of all contracts and agreements between the companies, whereby such assets and property were transferred to the Trust Company, that an accounting be had before the standing master, and that the petitioners be allowed to intervene."

Upon that record, in denying the writ applied for, this court said, among other things:

"The manifest theory and purpose of the original bill is and was, first, to redress a wrong done by the Loan Association, its stockholders participating therein, and its directors and officers, in fraudulently, and without legal or rightful authority, transferring its property and assets to the Trust Company; and, secondly, to wind out the affairs of the Loan Association, it being alleged that it was insolvent and disabled from continuing further with the business for which it was organized and incorporated. Very naturally, the first relief was to recover back the properties that had gone into the hands of the Trust Company fraudulently. This must needs be for the benefit of the corporation, the Loan Association, as a corporate entity, and not for the individual benefit of the stockholders, or, in a more limited sense, for the stockholders suing. * * * Now, advancing further in the analysis of the the sale and transfer of all of the assets of the defendant Loan Association cause and the parties, we find there are two classes of stockholders, namely, those who have not exchanged their stock in the Loan Association for stock in the Trust Company, and those who have exchanged their stock, but who seek to be reinstated in their original right. These latter, such as have appeared, came in by intervention. But many others of the same class did not come in or seek to intervene prior to the entry of the decree, and they are not taken care of by the decree, as it takes care of many nonexchanging stockholders not made parties to the suit either as plaintiffs or by intervention. * * * Now, in view of the law and the practice in such cases, considering the nature of the suit and the scope of the pleadings, namely,

eventually to wind out the business of the Loan Association (developing really into a receivership for the Trust Company), that many of the exchanging stockholders were not protected by the decree, and that the creditors of the Loan Association are not taken into account, nor were they given an opportunity in any way of coming in and establishing their rightful claims and demands, we are of the opinion that the court was without authority to make and enter a decree foreclosing and precluding their rights in the premises. The decree of February 27, 1913, in effect does that, and we hold, therefore, that the decree of March 12, 1914, was not beyond the jurisdiction of the court to make, and should not be expunged.

"We come to this conclusion not unmindful of the reasoning of counsel that the decree provides for all the nonexchanging stockholders, as if the exchanging stockholders—that is, those who had exchanged their stock in the Loan Association for stock in the Trust Company—were not strictly entitled to come in and be made parties to the suit. But the intervening petitions disclosed the fact that there was a large number of exchanging stockholders entitled to essentially the same relief as the nonexchanging stockholders, and, while not absolutely of the same class, that they were similarly situated, and it became at once manifest that the suit could not be equitably disposed of without extending to them the same privilege as to the nonexchanging stockholders. Their interests ought therefore to have been conserved as well, or the proper steps taken to prevent them from further participation, should they not make known their demands.

"We may add, by reason of the point being strongly urged by the respondent, that we are firmly impressed that it was not beyond the power and jurisdiction of the court to declare the Trust Company trustee of the property and assets of the Loan Association, and to impress a lien upon the property in favor of the stockholders. The remedy is a common one, and well within the scope of the relief grantable under the pleadings. Erie R. Co. v. Dial, 140 Fed. 689, 691, 72 C. C. A. 183; Jones v. Missouri-Edison Electric Co., 144 Fed. 765, 778, 75 C. C. A. 631; Smith v. Township of Au Gres, Mich., 150 Fed. 257, 261, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876."

In the present suit it appears from letters written by the secretary of the Loan Association to the complainant in the summer of 1911, and introduced in evidence by the latter, that the complainant was at that time endeavoring to withdraw from the Loan Association the money for his stock, although the latter had not then matured, and the complainant himself testified that in the latter part of 1911 he heard that two of the officers of each of the corporations—Edwards and Le Baron—were contemplating the merging of the assets of the Loan Association with the Trust Company, and that Le Baron came to El Paso, where complainant resided, to see whether he would exchange his shares in the Loan Association for the same number of shares in the Trust Company. "I told him," said the witness, "that I did not want to change my shares and he assured me that I would get my shares about the 1st of January and they told me that it had not matured. Then I came to Phœnix myself and saw them. They did not pay the stock, and I made inquiries and discovered that the examiner had withdrawn and thrown out a certain amount of loans that they had made, and that had reduced the value of all the stock so that it had not matured." The complainant further testified as follows:

"Q. Didn't you just testify that some officers of the Arizona Mutual told you that, because of the state auditor's directing that certain securities should be stricken from the assets because they were not good securities, they were unable to pay matured stock at its maturity? A. They could pay up to the value of the stock according to the value on the books. I came here with the idea of getting the cash payment for my stock at its matured value, but

Mr. Olsen told me that it had not matured. It was only worth $5,532 instead of $6,000. I did not wait until it matured. I sold it right there and then. I did not know whether the Loan Association had the money to pay it or not. They said they couldn't, according to their by-laws, declare the stock matured until it was matured. I said the reason it did not mature was because the bank examiner took out certain loans. I did not ask whether the Arizona Mutual had money in its treasury to pay off matured stock at its maturity. What I wanted to know was whether my stock had matured so I could get my money. I already testified exactly what the officer told me—that the bank examiner threw out certain loans which reduced the value of the stockholders' stock. I made no other inquiry as to the financial condition of the Arizona Mutual, except of Mr. Christy, who claimed he was a stockholder of the Mutual. I am a bookkeeper. I only went to the books to which I could get access. I did not ask to see the ledger and account books. I only asked to see the stockbooks, to see who the stockholders were. I had no talk with Edwards about his plan to secure stock of the Arizona Mutual for the Arizona Trust Company. When Mr. Le Baron was in El Paso, he told me that he wanted to exchange my stock."

It is perfectly clear, we think, from the complainant's own testimony, that he was well aware that the Loan Association was unable to pay its obligations to him prior to his sale of his stock in that corporation to the Trust Company, in consideration of the promissory note of the latter company secured by the collaterals that have been mentioned. Obviously he thereby secured an unlawful preference over the other shareholders of the insolvent Loan Association, which, as has been seen, had long before undertaken to sell and transfer all of its assets of every kind to the Trust Company—a part of which assets are those involved in the present suit. To sustain the appellant's exclusive claim to them would be to subordinate to that extent the rights of all of the other stockholders of the insolvent association, which would be manifestly contrary to the well-established law upon the subject. Aldrich v. Gray, 147 Fed. 454, 77 C. C. A. 597, 8 Ann. Cas. 832; Standard Savings & Loan Association v. Aldrich, 163 Fed. 216, 89 C. C. A. 646, 20 L. R. A. (N. S.) 393, and the numerous authorities cited in those cases.

The judgment is affirmed.