## ERIE R. CO. v. DIAL.

(Circuit Court of Appeals, Sixth Circuit. November 18, 1905.)

### No. 1,413.

BANKRUPTCY—PREFERRED CLAIMS—WRONGFUL CONVERSION AND MINGLING OF PROPERTY.

A manufacturing corporation, a short time before its bankruptcy, purchased rubber to manufacture into tires, which was to be paid for on delivery. The rubber was shipped with drafts attached to the bill of lading. The railroad company unloaded the rubber upon a platform near the bankrupt's factory, on which freight destined to the bankrupt and other parties in that locality was customarily unloaded, and to which there was a switch track, and it was forthwith taken and used by the bankrupt with other rubber, in the making of tires before the drafts were presented, and the same were not paid. Claims having been made on the railroad company by the shippers for wrongful delivery, that company purchased and took assignments of the claims of the shippers against the bankrupt. *Held*, that the action of the bankrupt in taking possession of the rubber and mingling it with its own property without making payment therefor was wrongful, and gave it no title as against the shippers or their assignee, who succeeded to their rights, and that such assignee was entitled to recover from the bankrupt's trustee, in preference to general creditors, the value of such portion of the rubber or its proceeds as came into his hands.

Appeal from the District Court of the United States for the Southern District of Ohio.

J. L. Zimmer, for appellant.

F. M. Hagan, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an appeal from an order of the District Court, made in the matter of the bankruptcy of the Victor Rubber Company, denying a claim for preference in the disposition of the bankrupt's estate.

The claim as presented to the referee was founded upon the following facts: The Victor Rubber Company was engaged in the manufacture and sale of rubber tires at Snydersville, Ohio. Being in want of crude rubber, it bought certain quantities thereof in New York of Earle Bros., Thompson & Co., Lionel Hagenaers Company, and William Wright & Co., respectively, to be shipped by rail and delivered at Snydersville upon payment of the purchase price. The goods were shipped accordingly on bills of lading with drafts attached in each case for the price of that shipment. And the invoices stated that possession of the goods would not be given until payment of the draft. There was no freight station at Snydersville, but the petitioner, the Erie Railroad Company, had constructed a switch and platform near the rubber company's factory where it received and delivered freight from and to the rubber company, and, to some extent, other parties. The freight agent at Enon, a mile and a half distant, had charge of the freight business at Snydersville. The course of business was for the railroad company to unload freight destined to the rubber company upon the platform, from whence it was taken by the employés of the

140 F.—44

rubber company, and in a few instances the goods had been taken away before they were paid for, although the terms of shipment required collection on delivery; but no general custom sanctioning such a proceeding was known to the shippers, nor, indeed, is it established that such a practice in that regard had prevailed as would bind the railroad company on future shipments. The goods in question were unloaded upon the platform on their arrival, and in each instance they were removed by the Victor Rubber Company forthwith and before the freight agent at Erton could, in the ordinary course of business, come for the freight charges or for the price agreed to be paid for the goods. The first shipments arrived on a Saturday evening, and the agent came Monday morning and demanded the freight and the price of the goods. The latter was not paid. In the other cases the goods were unloaded in the evening and were removed by the rubber company before the agent arrived on the following morning to collect freight and purchase money. In each instance when he arrived the rubber had been put in the "wash" and was already being prepared for use in the factory. The demands for the price were unavailing, and the rubber was, with other materials, converted into tires and these in turn mingled with old stock. Some of the new tires were probably sold before the bankruptcy proceedings were begun, but whether the proceeds have come into the hands of the trustee does not clearly appear. But we gather that the larger part was sold by the receiver or the trustee, and that the proceeds are in the assets. The rubber company shortly after became bankrupt.

The several vendors of the rubber, except Wright & Co., pursued the railroad company for its negligence in permitting the rubber company to get possession of their goods without paying for them. The railroad company settled with those parties by taking an assignment of their claims against the rubber company, paying therefor the amount of the claims. The case of the Wm. Wright Company will be referred to further on. There does not appear to have been any formal answer or other pleading of the trustee to the claims of the petitioners, and the matter seems to have been disposed of on the question of the sufficiency of the case as exhibited by the petitioners. The questions are whether the railroad company is entitled, either by way of subrogation or by virtue of the assignments, to stand in the place of the vendors of the rubber; and whether, if so, it is entitled to follow the proceeds thereof into the hands of the trustee and recover from him in preference to the general creditors.

The referee was of opinion that the railroad company, by delivering the goods to the rubber company in violation of the instructions of the shippers, became their debtor and was accepted as such, and that therefore the case was to be treated as one directly between the railroad company and the rubber company. Upon that assumption the referee reasoned that the voluntary delivery of the goods by the former to the latter was a waiver of the conditions of payment. The district judge confirmed the opinion of the referee, and the petitioner's claim of preference was denied. We think, however, that the referee took an erroneous view of the relations of the parties, and that his conclusion on that aspect of the case rests upon untenable ground. The settlement be-

tween the shippers and the railroad company was this: The shippers assigned their claims against the rubber company to the railroad company, and the latter paid in consideration the amount thereof to the shippers. No right of the rubber company was prejudiced by this transaction, and the substantial equities of the case were well worked out by the transaction. Knowing that these goods could not be lawfully taken until they were paid for, and that the railroad company had no authority to deliver them without payment, the rubber company seized an opportunity for wrongfully obtaining the possession of the goods and proceeded to commingle them with its own. The title of the shippers was not divested by this trespass. It did not convert the railroad company into a debtor to the shippers, whatever the liability of the railroad company for negligence might be, or the rubber company into a debtor of the railroad company.

The trustee says that the rubber company converted the rubber into tires and commingled them with other tires which it had on hand, and that the property can be no longer identified. But the vendors of the rubber never consented to this. In a common-law court this might, as between the owners and the trespasser, have given title to the owners of the whole mass of tires, if they were indistinguishable. But a court of equity, for the purpose of saving to creditors that value which attached to the things before owned by the trespasser, will forbear to enforce a confiscation, and, instead, will accord a lien to the owner upon the mass for the value of the things converted. We had occasion to consider this subject in Holder v. Western German Bank, 136 Fed. 90, 68 C. C. A. 554, where we held, upon the authority of Knatchbull. v. Hallett, 13 Ch. Div. 696, and National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, that, where the tort-feasor had mingled the property of the owner with his own, a lien would attach to the mass pro tanto. The assets came to the trustee in this condition. His interest therein is no other or greater than that of the bankrupt, except where the bankrupt has conveyed his property with intent to defraud his creditors. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re F. B. Shuster Co., 134 Fed. 43, 46, 67 C. C. A. 117. We recognize that the rule only permits the following of the converted property into assets which can be traced as proceeds, and that the lien does not attach to assets in which neither the thing nor its value can be found.

We have not found it necessary to consider what remedy the petitioner might have upon the principles of the doctrine of subrogation, and we express no opinion upon that subject. It follows that in the present case it is necessary to know what portions of this rubber, or of the tires into which it was converted, or of the proceeds of such of them as were sold by the bankrupt before the petition in bankruptcy was filed, came into the hands of the trustee or of the receiver whom he succeeded. We can only see from this record that some part, at least, of the tires or their proceeds passed to the receiver and to the trustee, and we might conjecture that nearly all the tires or their proceeds were in the assets which passed from the bankrupt, but the data are too vague for prudent action. The proceedings in the court below were along the

preliminary inquiry and did not reach much beyond the ordinary conse-
quences of a demurrer.

The proper course will be to reverse the order of the District Court
and of the referee, and remand the cause with directions to ascertain
what part of the assets of the bankrupt are chargeable with a lien in
favor of the petitioner upon the principles affirmed by this opinion, and
to take proofs, if necessary, for that purpose, and thereupon order that
the trustee pay those claims of the petitioners which were acquired from
Earle Bros., Thompson & Co. and Lionel Hagenaers Company, respec-
tively, with interest from the time they accrued to the extent of the sum
of such assets. The appellant should recover the costs of this court.
Those already incurred in the District Court may be dealt with by that
court in its final order.

With respect to the claim founded on the shipment of Wm. Wright
& Co., the petitioner was not, at the time of filing its petition, in a posi-
tion to assert it. It had neither paid the claim nor purchased it. The
petition avers that certain creditors of Wm. Wright & Co. have served
writs of garnishment of this obligation, and the petitioner does not
know to whom it may pay it. If in due season it shall acquire that
claim, it may file a supplemental petition in that behalf, and the District
Court will deal with it as the rights of the parties interested may then
require. It is so ordered.