### In re BENZ.

### MARINE NAT. BANK et al. v. McCREERY & CO. et al.

(Circuit Court of Appeals, Third Circuit. December 7, 1914.)

### No. 1879.

**1. BANKRUPTCY (§ 353\*)—CLAIMS—PRIORITY—VALUE OF PROPERTY.**

The property of a bankrupt hotel keeper being offered as a whole, a
bid of $12,100 was made, which the receiver declined to accept, and, the
property being offered again, B. bid $7,600 for the whole, whereupon it
was. offered separately, and, B. bid $7,500, proportioned $3,600 for the
goods and chattels on the premises, $3,700 for the leasehold, and $200
for all the other property, including the good will and right to apply for
a license. These bids were rejected, and at a subsequent sale B. pur-
chased the whole amount on an unapportioned bid of $16,010. *Held*, that
where certain claimants had liens on different portions of the property,
the landlord on the tangible chattels and a bank on the leasehold, and
there was no other evidence of value, the referee, in determining the
amounts to which each claimant was entitled out of the whole amount
received, properly treated the prior separate bids as evidence of the value
of the different parts of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544;
Dec. Dig. § 353.\*]

**2. BANKRUPTCY (§ 151\*)—TITLE OF TRUSTEE—PROPERTY FRAUDULENTLY CON-
VEYED.**

A bankrupt's mother, being sued by M. & Co. in February, 1912, trans-
ferred all her real estate to the bankrupt for a nominal consideration,
and following the transfer the bankrupt agreed to buy the leasehold, per-
sonal property, etc., of a hotel from K. in part payment of the price. M.
& Co., having recovered a judgment against the bankrupt's mother, in
January, 1913, instituted a suit in equity against the bankrupt and his
mother to set aside the transfer of the real estate, and in the following
October obtained a decree finding that the transfer was fraudulent, and
that property of the mother, equal to $13,700, had passed into the hotel,
which M. & Co. were entitled to have applied on their claim against the
mother, shortly after which the son was adjudged a bankrupt, and all
the property of the hotel was sold for a lump sum; the proceeds, how-
ever, being subject to a lien in favor of the landlord on the furniture,
fixtures, etc., and in favor of a bank on the unexpired leasehold. *Held*
that, the proceeds of the mother's realty fraudulently conveyed to the
bankrupt having been traced into the proceeds of the sale of the hotel
property, M. & Co. were entitled to the balance remaining after satisfying
the liens of the landlord and the bank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 193; Dec.
Dig. § 151.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. BANKRUPTCY (§ 143\*)—PROPERTY VESTING IN TRUSTEE—LICENSES—SALE.**

Though no lien can be obtained by levying an execution on a license to sell liquor, the license is nevertheless a valuable species of property, which may be sold in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.\*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of bankruptcy proceedings of Landelin J. Benz. From an order establishing the priority of certain claimants as to a fund derived from the sale of certain of the bankrupt's assets, the Marine National Bank and William Arrowsmith, as executor of Penelope McCrea, appeal. Affirmed.

Hill Burgwin, of Pittsburgh, Pa., for appellants.

Marcus W. Acheson, Jr., of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. Landelin J. Benz, the bankrupt, was a hotel keeper in the city of Pittsburgh. He occupied the building under a lease that had several years to run, and owned the furniture, fixtures, and movable chattels on the premises, enjoying also the privilege of a liquor license and the good will of the combined business. These three classes of property—the unexpired term, the tangible chattels, and the intangible license and good will—were so related to each other as apparently to satisfy the District Court that they would probably bring a higher price if they were sold as a whole than if they were sold separately; and accordingly the receiver in bankruptcy was authorized to sell them as a whole, but, of course, only if a larger sum could be realized thereby. Moreover, as the property was burdened by certain liens or equities (presently to be considered), the court ordered the sale to be made discharged thereof; but provided that the owners of these claims might—

"* * * assert whatever liens, priorities, or equities they may have in the personal property and leaseholds to be sold by the receiver against the fund arising from the proceeds of said sale: Provided, that they or any of them shall have no lien on any particular portion of the interests and property sold by reason of said property being sold as a whole, other than they would have in said particular portion of the property according to law."

This order was made on December 23, 1913, and on December 29 the property was offered as a whole and a bid of $12,100 was made. The receiver declined to accept it, and adjourned the sale until December 30, when the property was again offered as a whole, and a bid of $7,600 was offered by Martin P. Brown. Thereupon the property was offered separately, and Brown offered $7,500, apportioned as follows:

"Goods and chattels on premises, $3,600.

"Leaseholds, $3,700.

"All other property, including good will and the right to apply for license, $200."

These bids also were declined, and on January 6 the property was again offered as a whole, and was sold to Brown for $16,010; this sale being confirmed by the court. The lienholders objected to the original order, and objected also at each sale to the receiver's selling the property as a whole, objecting finally to the confirmation; but they took no appeal, and are not now seeking to set aside either the order of sale or the sale itself. On the contrary, they appeared before the referee and presented their claims on the fund, and the only dispute before us concerns the order of distribution that was made by the referee and afterwards approved by the court.

This brings us to the respective rights of the three claimants among whom the fund was divided. They are Penelope McCrea's executor, who represents the landlord, the Marine National Bank, which is the pledgee of the unexpired term as collateral security for certain notes, and McCreery & Co., whose claim will be described in a moment. It is conceded that the first two claimants are entitled to priority—the landlord upon the proceeds of the furniture and of the other tangible chattels on the premises, and the bank upon the proceeds of the unexpired term; the only question being how much they are entitled to receive. The landlord's claim is for $7,651.27, and the claim of the bank is for $7,900; but the referee awarded them only $3,600 and $3,700, respectively, awarding the remainder to McCreery & Co. The landlord and the bank have each appealed, and the question to be settled is whether the referee was right in restricting their claims to the sums just stated.

[1] He rested his ruling on the ground that neither claimant had a lien on the whole of the property sold, but only on a certain portion thereof—the landlord, on the tangible chattels; and the bank, on the unexpired term of the leasehold—and that the only satisfactory evidence before him of the value of these portions, respectively, was the sums that were bid for them on December 30. The question is not without some difficulty, but we do not see our way to a different conclusion. The amounts bid were the only direct evidence on the subject, and the only other evidence is the increased amount for which the property was finally sold as a whole. The referee reports that he "afforded counsel full opportunity to offer any further evidence they might wish as to the value of the said parcels," and it appears from the record that counsel for both the landlord and the bank stated "that he does not desire further time to prove the value of the different items sold as a whole, being satisfied to rest the question of the value upon the evidence shown by the record." Under these circumstances we think the referee was right in relying on the decision of this court in Carroll v. Young, 9 Am. Bankr. Rep. 643, 119 Fed. 576, 56 C. C. A. 380, a closely analogous case, and in accepting the bids referred to as sufficient evidence of value. We do not know definitely why the same bidder was willing to pay $16,010 on January 6, although he had offered no more than $7,600 a week before; but we gather from the brief of appellants' counsel that he had more competition on the later occasion than on the earlier. The small separate bid for the license and good will is readily explained; for, if he secured the leasehold, no one else could use the license, since the Pennsylvania law permits such a privilege to be grant-

ed only to the occupier of the premises. It seems to be a reasonable prima facie inference that the tangible chattels and the lease were a negligible factor in the increased price, especially when we take into consideration the facts that on January 6 the purchaser was obliged to buy the whole property or none, and that competitors were then bidding against each other.

[2] The claim of McCreery & Co. remains to be considered. Benz was adjudicated a voluntary bankrupt on November 12, 1913, and on that date the title to all his property passed by law to the trustee, but subject to the three claims before us; the landlord's claim being entitled to priority out of the furniture, fixtures, etc., and the bank's claim being entitled to priority out of the proceeds of the unexpired term. McCreery & Co.'s claim grows out of a fraudulent transfer of real estate that had formerly belonged to Anna Benz, the bankrupt's mother, and had been transferred by her to him, and used by him in part payment for the property that produced the fund before us. But the real estate was no longer hers, for the following reasons: She had owed several thousand dollars to McCreery & Co. for some time, and on February 23, 1912, McCreery & Co. had sued her to recover the debt, obtaining judgment in the following June. A few weeks after the suit was brought she transferred all her real estate to the bankrupt for a nominal consideration, and in the spring of 1912 the bankrupt—who had agreed to buy the leasehold, personal property, etc., from Anthony Kramer, the person then keeping the hotel—conveyed the real estate to Kramer in part payment of the purchase price. In January, 1913, McCreery & Co. brought a bill in equity against the bankrupt and his mother, and on October 2, 1913, the District Court decided that her deed to him was a fraudulent transaction, participated in by both, and decreed:

"That there is the sum of $13,700 belonging to the defendant Anna Benz, which is represented to that extent by the Commercial Hotel, located on Sixth street, in the city of Pittsburgh, the title to which is in Landelin J. Benz, and that such sum, with interest from April 25, 1912, should be applied in payment of the debts of the said Anna Benz." (It is agreed that "the Commercial Hotel" does not mean the building, but the lease, the personal property, etc.)

"That Justus Mulert, of the city of Pittsburgh, be and is hereby appointed receiver of the said Commercial Hotel, the good will, leases, stock, and furnishment, in the hands of the defendant Landelin J. Benz, for the benefit of the creditors of Anna Benz, to the end that the receiver may, under the direction of the court, realize upon said assets and pay the debts of Anna Benz to the amount, with interest, above mentioned, having due regard, of course, to the equities of all other persons in the premises. * * *"

On November 12, Landelin J. Benz was adjudicated bankrupt, and his property was sold in the proceedings to which we have already referred.

Now it is evident, and the District Court has decided, that the real estate formerly belonging to Anna Benz was directly employed as part of the purchase money of the very property that produced the fund now for distribution; and that McCreery & Co. had obtained an equitable lien thereon—namely, the right to follow this property and to apply it to the payment of their judgment—before the adjudication was en-

tered. In fact, a receiver in equity had actually been appointed for this purpose, but apparently all the parties in interest have been content to abandon that proceeding and to settle the whole controversy in the bankruptcy court.

[3] Under these facts we think the right of McCreery & Co. to receive the remainder of the fund in controversy cannot be successfully denied. No question of preference could arise in any event, for the bill in equity was filed more than four months before November, 1913, and as this was a creditors' bill a lien was obtained at the time of filing similar to a lien obtained by issuing an execution against the bankrupt's property. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122. It is true that a lien cannot be obtained by issuing execution against a license to sell liquor (23 Cyc. 155, par. 4, and note); but a license is nevertheless a valuable species of property, which may be sold in bankruptcy (Black, Bankruptcy, § 336; Collier [9th Ed.] 1011), and we think McCreery & Co. acquired a right to follow its proceeds whenever it should be converted into money.

The bankrupt was not using his own property when he fraudulently transformed his mother's real estate into the several kinds of property that he bought from Kramer, but he was using what belonged in equity to McCreery & Co., and therefore they may follow it or its proceeds as long as either can be definitely traced, or until superior equities intervene. The money that he borrowed from other persons to complete the transaction with Kramer became his own money, and he might lawfully use it as he pleased; but he never became the owner of McCreery & Co.'s equitable interest in his mother's real estate, and he had no right to apply that interest for his own advantage. His other creditors have the right to share in the proceeds of his own property (subject, of course, to lawful priorities); but they can have no claim, legal or equitable, on the proceeds of property that belonged in equity to McCreery & Co. and never belonged to the bankrupt at all. Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Railroad Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183; Re Larkin (D. C.) 202 Fed. 577; Re Hamilton Furniture Co. (D. C.) 117 Fed. 776. As there can be no doubt that Anna Benz's real estate has been followed directly and inextricably into the leasehold, furniture, license, and good will, the proceeds of this mass must respond to such claims as might lawfully be urged against the mass itself. Under the facts stated the trustee had no higher right than the bankrupt himself.

It follows, therefore, that as the landlord and the bank have received all they have shown themselves entitled to receive, the remainder of the fund was properly awarded to McCreery & Co.

In each case the decree appealed from is affirmed.