In re DENNETT et al.

(Circuit Court of Appeals, Ninth Circuit.   February 15, 1915.   Rehearing Denied March 18, 1915.)

No. 2417.

1. JUDGMENT ⊙⇒342—OPENING OR SETTING ASIDE—JUDGMENT ENTERED WITHOUT JURISDICTION.

Where the purpose of a suit by a stockholder in a loan association, brought in behalf of himself and all others similarly situated, was not only to recover for the benefit of the association property wrongfully transferred by its officers and directors to a trust company, but to wind up the affairs of the association and distribute the property among its stockholders, and intervening petitions disclosed that there were a large number of stockholders who had been induced by fraud and deceit to exchange their stock for stock in the trust company, and who were entitled to be restored to their rights as stockholders in the loan association, a decree which did not protect the rights of creditors and of such of the exchanging stockholders as did not intervene, nor give them any opportunity to come in and establish their rightful claims and demands, but which, on the contrary, foreclosed and precluded their rights, was beyond the jurisdiction of the court; and hence the court had power, after the expiration of the term at which such decree was rendered, to set it aside on the petition of stockholders whose rights were not thereby protected, and after a hearing to enter a new decree properly protecting the rights of all parties.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 668–671; Dec. Dig. ⊙⇒342.]

2. PARTIES ⊙⇒34—ONE OR MORE SUING ON BEHALF OF ALL INTERESTED.

Where the parties interested are very numerous, and it would be almost impossible to bring them all before the court, the court will, notwithstanding a plea of the want of parties, proceed to a decree.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 53; Dec. Dig. ⊙⇒34.]

3. CORPORATIONS ⊙⇒210—SUITS FOR DISSOLUTION—PARTIES.

In a stockholder's suit to recover property wrongfully and fraudulently transferred by the officers and directors of a corporation, and to wind up the affairs of the corporation and distribute its funds among the stockholders, the creditors of the corporation should have been made parties and given an opportunity to come in and share according to their right in the distributive funds of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 808–813; Dec. Dig. ⊙⇒210.]

4. CORPORATIONS ⊙⇒213—STOCKHOLDER'S ACTION—SCOPE OF RELIEF.

In a stockholder's suit to recover for the benefit of the corporation property wrongfully and fraudulently transferred by its officers and directors to a trust company, and to wind up the affairs of the corporation, where the court found that such property had become so confused and inseparably commingled with the property of the trust company that it was impracticable and impossible to direct and enforce a retransfer, it was not beyond its power and jurisdiction to declare the trust company a trustee of the property and to impress a lien thereon in favor of the stockholders.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⊙⇒213.]

At Law.   Application by John Dennett, Jr., and others for a writ of mandamus directed to Hon. William H. Sawtelle, District Judge of the

United States District Court for the District of Arizona and to such court. Writ denied.

See, also, 215 Fed. 673.

This is an application for an order directed to the District Court of the United States for the District of Arizona, and the honorable judge thereof, requiring that cause be shown why a writ of mandamus should not issue out of this court prohibiting the said District Court and the judge thereof from exercising any jurisdiction over the final decree entered in the cause of Charles W. Clark, complainant, against the Arizona Mutual Savings & Loan Association and the Arizona Trust Company, defendants, February 27, 1913, and commanding the court and the judge thereof to expunge from the records of said court the order and decree of March 12, 1914, made in the same cause, and to desist and cease from exercising jurisdiction therein contrary to and in violation of the terms of said final decree of February 27, 1913. The show-cause order was granted, and, the respondents having appeared and answered, cause was presented as to whether the writ should properly issue.

The cause was instituted by Charles W. Clark, of the state of California, against the Arizona Mutual Savings & Loan Association and the Arizona Trust Company, both of the state of Arizona. For convenience, the defendants will be called, respectively, the Loan Association and the Trust Company. Clark is and was a stockholder in the Loan Association, and complains that the association is insolvent, but that the officers and directors thereof have failed and neglected to dissolve the corporation, to liquidate its obligations, or to wind out its business and distribute its assets, and further that, without the knowledge or consent of complainant and many others similarly situated, such officers and directors entered into a corrupt and fraudulent agreement with certain persons, whose names are unknown, whereby it was agreed and understood that the defendant Trust Company should be organized for the purpose of taking over the assets of the Loan Association, and that thereafter, when said Trust Company was so organized, a pretended and fraudulent agreement was entered into, whereby the Loan Association sold and transferred to the Trust Company all of its assets and property, including the good will, in consideration that the Trust Company should issue and deliver 1,300 shares of its capital preferred stock, of the par value of $100 per share, to the Loan Association, it being understood that the Loan Association would thereupon suspend its operations and cease doing business; that accordingly, in the latter part of April or first of May, 1911, the Loan Association pretended to sell, assign, transfer, and set over to the Trust Company all of its said assets, notes, mortgages, and other securities of every kind and character, since which time the Trust Company has exercised exclusive control and dominion over, and has dealt with, said assets and securities as its own property, and that the Loan Association, or its officers and directors, or a majority of its stockholders, were possessed of no right, power, or authority so to convey or dispose of the assets of the Association.

It is further charged that, by reason of such fraudulent transfer of the assets and securities of the Loan Association, the said Trust Company, its officers and directors, became and were trustees of such property for the benefit of the complainant and other stockholders similarly situated, but that, in furtherance of their fraudulent scheme, they sought to induce the stockholders in the Loan Association to exchange their stock for stock in the Trust Company, and did so induce many of them to make or agree to make such exchange; that an intimate relationship of trust and confidence exists between the officers of the Trust Company and the officers of the Loan Association, and that the officers and directors of both said defendants have willfully violated their duties and the said trust and confidence which should have existed between them and complainant and other stockholders similarly situated, in that the officers and directors of the Trust Company have dealt with such property and assets for their own private and selfish ends and purposes, and without benefit to complainant and other stockholders similarly situated, and have used such assets and property of the Loan Association in the exploitation of various speculative enterprises in which the Trust Company has engaged, and

have commingled such property with the Trust Company's own and after-acquired property, so that it will be difficult, if not impossible, to segregate the same; that it would be and is useless and futile for complainant and other stockholders similarly situated to demand of the officers and directors of the Loan Association to proceed for the recovery of the assets unjustly appropriated by the Trust Company, for the reason it would require said officers and directors to repudiate their own acts, and hence the complainant (employing the language of the bill) "brings this bill in equity in his own behalf and in behalf of all others similarly situated, to the end that the transactions herein set forth as heretofore made between the defendants above named be annulled and declared void and held for naught, and to the end that an accounting may be had between the two defendants above named, and between the defendant Loan Association and your orator and others similarly situated, and to the end that the property and assets of the defendant Loan Association, in which your orator and others similarly situated has and have respectively an interest, may be conserved and protected, and that a receiver of the defendant Loan Association may be forthwith appointed, with full powers to acquire and take possession of and to marshal the assets of the defendant Loan Association in whosesoever hands the said assets and properties may be, and to ascertain the amounts due and owing from the said defendant Loan Association to your said orator and other stockholders thereof similarly situated, and that such sums of money, if any, as may be due and owing to the defendant Loan Association be ascertained and determined, and that your orator and others similarly situated, who may desire to intervene herein in support of this bill of complaint may be permitted so to do, and that your orator and such persons as may intervene, as aforesaid, may be awarded such other relief as to a court of equity may seem proper."

The complainant prays that the transactions complained against be annulled, that a restitution of the assets of the Loan Association be had, that an accounting between the defendants be had and taken, and also between the Loan Association and complainant and other stockholders similarly situated, that a receiver be appointed, and that the affairs of the defendant Loan Association be wound up, and its assets distributed to those found entitled thereto and for general relief.

Later there was filed in court a petition of intervention by 39 persons, 4 of whom claimed to be stockholders in the Loan Association, and the others claimed to have been stockholders in such association, but had previously exchanged their stock for stock in the Trust Company. All these, in support of their petition to intervene, refer to complainant's bill, and make all the allegations thereof part of their petition, except so much of paragraph 3 as relates exclusively to the complainant. It is further alleged that all the petitioners who had exchanged their stock in the Loan Association for stock in the Trust Company were induced to do so by fraud and deceit practiced on the part of those officers and directors of the two companies, and others in collusion with them, who were responsible for the sale and transfer of the Loan Association's assets to the Trust Company, and that the transactions whereby such stock was exchanged were fraudulent and void; the petition setting out at great length and in detail the specific facts constituting the fraud. The petitioners further show the commingling of the assets of the two companies and the insolvency of the Trust Company also, and pray that they and each of them be permitted to intervene, and as to those of them who have exchanged their stock that such exchanges be rescinded as fraudulent and void, and that they be reinstated to their former holdings, and otherwise all demand relief as by the complainant's bill. Some time later three other petitions for intervention were filed, by nonexchanging and exchanging stockholders, to the number of 77, with like allegations as in the preceding, and demanding like relief.

After answer and replication, the court made and entered its decree, finding:

First. That certain of the interveners were still stockholders in the Loan Association.

Second. That certain others of the interveners had exchanged their stock in the Loan Association for stock in the Trust Company.

Third. That the Loan Association was, about the month of March, 1911, insolvent, and that the Trust Company was organized by those in control of the Loan Association, the purpose of said organization being to take over the assets and properties of the Loan Association, and to engage in business for itself.

Fourth. That as to interveners and other nonconsenting stockholders of the Loan Association, who had not transferred their stock for stock in the Trust Company, the said transfer of assets and property was unlawful and invalid, and not binding upon them.

Fifth. That pursuant to such purpose all the assets and properties of the Loan Association were transferred to the Trust Company, which latter company and its officers have dealt with them as their own, and have confused and inseparably commingled such assets and properties with those of the Trust Company, so that it is impracticable and impossible to direct and enforce a retransfer of the assets and properties of the Loan Association, and the profits thereon.

Sixth. That the exchanging stockholders were induced to make the exchange of their stock through false representations, and it is decreed that such stockholders, and each of them, be restored to their original status as stockholders in the Loan Association.

Seventh. And to the end that the rights of all of the interveners herein and of the outstanding stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the defendant Trust Company may be adequately preserved and protected, the court hereby confirms the sale and transfer of all of the assets of the defendant Loan Association to the defendant Trust Company, and adjudges that complete title is vested in the defendant Trust Company of, in, and to all of the assets and properties of whatsoever kind or nature heretofore owned by the defendant Loan Association, subject only to the lien and charges hereinafter specified.

Eighth. And for the further protection of the rights of the said interveners and the said stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the defendant Trust Company the court adjudges and determines that all of the assets and properties now or hereafter owned or acquired by the defendant Trust Company be, and they hereby are, impressed with the trust and lien in favor of each of the said interveners named herein to the extent and amount set opposite the names of each, and in favor of the stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the Trust Company for the amounts heretofore paid in by such last named persons in the following names and amounts (setting them out).

The remaining paragraphs deal with directions to the temporary receiver, the disposition of counsel's and receiver's compensation, and the appointment of a permanent receiver for both the Loan Association and the Trust Company, with directions to such permanent receiver, after payment of certain costs and allowances, to "pay pro rata in equal shares to each and all of the interveners herein and to the stockholders of the defendant Loan Association named in the preceding eighth paragraph such sums of money as may be received by such permanent receiver until the said interveners and the said nonexchanging Loan Association stockholders named in the preceding eighth paragraph are paid in full the amounts set opposite their respective names herein," and the balance, if any remain, to the Trust Company.

This decree was entered February 27, 1913. The term of court expired April 5, 1913. On that day, but after the adjournment of the court for the term, J. L. Waring and a number of others, all of whom, except one, namely John Wagner, were stockholders in the Trust Company, but had theretofore exchanged Loan Association stock for their Trust Company stock, filed a petition in intervention adopting the allegations of complainant's bill, and also the allegations of the petitions of preceding interveners wheresoever applicable, and prayed that the decree of February 27, 1913, be set aside and held for naught, and that the case be referred, and that they be allowed to intervene, and for relief on a like basis as preceding interveners, but further that an accounting be had between the Loan Association and the Trust Company, and

for other relief. Later, about July 15, 1913, these petitioners and many others filed another petition in the cause, seeking practically the same relief. Still later, to wit, on March 12, 1914, the cause having been brought on for hearing, the court directed a modification of the decree of February 27, 1913, and the restoration of the assets and property of the Loan Association by the Trust Company, and a vacation of all contracts and agreements between the companies, whereby such assets and property were transferred to the Trust Company, that an accounting be had before the standing master, and that the petitioners be allowed to intervene.

William M. Seabury, of Phœnix, Ariz., for petitioners.

George J. Stoneman, Reese M. Ling, O. T. Richey, Benton Dick, and J. E. Morrison, all of Phœnix, Ariz., and R. E. Morrison, of Prescott, Ariz., for respondent.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] That the term of court had expired at which the first decree was made and entered no one questions, and that a court is without power or authority to modify, set aside, or open up a decree, rendered properly within the scope of the pleadings, after the expiration of the term at which it was given and entered, is likewise conceded. But it is insisted by respondent and counsel that the court exceeded its jurisdiction in entering the decree, for that the relief granted was such as the court could not properly administer.

The manifest theory and purpose of the original bill is and was, first, to redress a wrong done by the Loan Association, its stockholders participating therein, and its directors and officers, in fraudulently, and without legal or rightful authority, transferring its property and assets to the Trust Company; and, secondly, to wind out the affairs of the Loan Association, it being alleged that it was insolvent and disabled from continuing further with the business for which it was organized and incorporated. Very naturally, the first relief was to recover back the properties that had gone into the hands of the Trust Company fraudulently. This must needs be for the benefit of the corporation, the Loan Association as a corporate entity, and not for the individual benefit of the stockholders, or, in a more limited sense, for the stockholders suing. In such cases, as is said in Dewing v. Perdicaries, 96 U. S. 193, 198 (24 L. Ed. 654):

"The avails of the litigation, if there be any, go to the corporation, and are a part of its means, as if it had itself sued and recovered."

See, also, Howe v. Barney et al. (C. C.) 45 Fed. 668.

If the relief were not to extend further, the purpose of the suit would be at an end when the property was recovered and restored to the Trust Company. The suit being by a stockholder, in his own behalf and that of all other stockholders similarly situated, it is clear that the interests of all would be subserved by the general decree restoring the property.

[2] But the bill contemplates the restoration of the property to an insolvent concern, and the winding up of its business. In this the stock-

holders have a concern individually, and each is solicitous that the proper proportion of the proceeds of the assets shall be paid to him. The suit then becomes one, in its ultimate analysis, for the distribution of funds among stockholders according as each is entitled in his individual right. In such a suit, all persons interested should be made parties, unless it is one falling within certain well-recognized exceptions. One of these exceptions is where the parties are very numerous, and the court perceives that it will be almost impossible to bring them all before it. In this and analogous cases, if the bill purports to be, not merely on behalf of the plaintiffs, but of all others interested and similarly situated, the court will, notwithstanding a plea of the want of parties, proceed to a decree. The principle which forms the basis of the exception is:

"That the court must either wholly deny the plaintiffs an equitable relief to which they are entitled, or grant it without making other persons parties; and the latter it deems the least evil, as it can consider other persons as quasi parties to the record, at least for the purpose of taking the benefit of the decree, and of entitling themselves to other equitable relief, if their rights are jeoparded." West v. Randall et al., 29 Fed. Cas., pages 718, 723, No. 17,424.

The whole doctrine is concisely stated by Mr. Justice Nelson in Smith v. Swormstedt, 16 How. 288, 303 (14 L. Ed. 942), as follows:

"Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation, by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

As to the particular exception, see, also, McArthur v. Scott, 113 U. S. 340, 391, 5 Sup. Ct. 652, 28 L. Ed. 1015. See, also, Davis v. Peabody, 170 Mass. 397, 400, 49 N. E. 750, and March v. Eastern Railroad Co., 40 N. H. 548, 566, 77 Am. Dec. 732.

Such in fact is the equity rule prescribed by the Supreme Court, being No. 38, as follows:

"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

The rule before the late revision was qualified by the clause:

"But in such cases the decree shall be without prejudice to the rights and claims of the absent parties."

The rule, says Mr. Bates, in his work on Federal Equity Procedure (section 61, vol. 1), is declaratory of the rule as it previously existed; this without the modification by the clause above quoted, and as it stands under the revised rules.

There must come a time in such a proceeding where a suit is brought by persons of a class in their representative capacity as representing the whole who may come in and contribute to the expenses of

the suit and share in the recovery, as this one was, when the judgment or decree will become final and binding as to all, as otherwise there could, in many cases, be no end to the litigation. But in this relation it is well to pay heed to Judge Story's cautious admonition. He says, in West v. Randall et al., supra:

"Yet, in these cases, so solicitous is the court to attain substantial justice, that it will permit the other parties to come in under the decree, and take the benefit of it, or to show it to be erroneous, and award a rehearing, or will entertain a bill or petition, which shall bring the rights of such parties more distinctly before the court, if there be certainty or danger of injury or injustice."

As to the question of the finality of such a suit, it is declared by Chancellor Walworth, in Gardner·v. Heyer, 2 Paige (N. Y.) 11, 19, that:

"If such parties neglect to come in under the decree, after a reasonable notice to them for that purpose, the fund will be distributed without reference to any unliquidated or unsettled claims which they might have had upon the same. But if the rights of such absent parties are known and ascertained by the proceedings in the suit, provision will be made for them in the decree."

And in Kerr et al. v. Blodgett et al., 48 N. Y. 62, 67, the court says:

"In such a suit, when an order or a decree for an accounting is once made, under which all creditors are authorized to come in and present their demands, it operates as an interlocutory judgment, in favor of each and every creditor of the fund, whether he actually comes in or not, as effectually as if he had been named and had appeared as a party; and after such an order is made, no other creditor will be allowed to bring or to proceed with a separate suit for relief, but he must prove his claim and seek his relief in that suit. If he fails to come in and prove his claim before the final decree for distribution, he will be too late, and his claim will be barred, as it certainly would after the fund was distributed under the decree. After the decree, and before distribution, a creditor who has not proved his claim may, upon a satisfactory excuse for his default, apply to the court, in that action, to be let in, and the court may open his default, as in other cases, upon such terms as may be proper."

But the procedure seems to be for the court to enter an interlocutory order, whereby all parties interested are required to come in and prove their demand. When such a judgment is entered, as held by the court in Hirshfeld v. Fitzgerald, 157 N. Y. 166, 180, 51 N. E. 997, 1000 (46 L. R. A. 839), it is effectual for all interested parties (in that case creditors), "for the court then gives them an opportunity to come in, prove their claims, and share in the recovery. If, however, they neglect to come in and be made parties at such time, they will be barred and not permitted to share in the distribution of the fund."

[3] Now, advancing further in the analysis of the cause and the parties, we find there are two classes of stockholders, namely, those who have not exchanged their stock in the Loan Association for stock in the Trust Company, and those who have exchanged their stock, but who seek to be reinstated in their original right. These latter, such as have appeared, came in by intervention. But many others of the same class did not come in or seek to intervene prior to the entry of the decree, and they are not taken care of by the decree, as it takes care of many nonexchanging stockholders not made parties to the suit

either as plaintiffs or by intervention. And, furthermore, in such a suit the creditors should be made parties or given their opportunity to come in and share, according to their right, in the distributive funds of the defunct corporation. As fitting the conditions here present, the rule is stated thus:

"In cases where the stockholders sue the directors of a dissolved corporation, on the ground that they have grossly mismanaged its affairs, in that they have permitted directors to take control of the corporate funds and other assets and appropriate them to their own use and the benefit of their individual creditors, the bill should be so framed as to allow the creditors of the corporation to come in and be made parties, since they have a direct interest in the subject of the controversy. Stated in another way, the bill should be brought, not only in behalf of the other stockholders, but also in behalf of the creditors." Section 4636, Thompson on Corporations (2d Ed.).

This is apparent, because there can be no adequate or equitable winding out of the business of any concern unless the rights of the creditors are properly conserved. Now, in view of the law and the practice in such cases, considering the nature of the suit and the scope of the pleadings, namely, eventually to wind out the business of the Loan Association (developing really into a receivership for the Trust Company), that many of the exchanging stockholders were not protected by the decree, and that the creditors of the Loan Association are not taken into account, nor were they given an opportunity in any way of coming in and establishing their rightful claims and demands, we are of the opinion that the court was without authority to make and enter a decree foreclosing and precluding their rights in the premises. The decree of February 27, 1913, in effect does that, and we hold, therefore, that the decree of March 12, 1914, was not beyond the jurisdiction of the court to make, and should not be expunged.

We come to this conclusion not unmindful of the reasoning of counsel that the decree provides for all the nonexchanging stockholders, as if the exchanging stockholders—that is, those who had exchanged their stock in the Loan Association for stock in the Trust Company —were not strictly entitled to come in and be made parties to the suit. But the intervening petitions disclosed the fact that there was a large number of exchanging stockholders entitled to essentially the same relief as the nonexchanging stockholders, and, while not absolutely of the same class, that they were similarly situated, and it became at once manifest that the suit could not be equitably disposed of without extending to them the same privilege as to the nonexchanging stockholders. Their interests ought therefore to have been conserved as well, or the proper steps taken to prevent them from further participation, should they not make known their demands.

[4] We may add, by reason of the point being strongly urged by the respondent, that we are firmly impressed that it was not beyond the power and jurisdiction of the court to declare the Trust Company trustee of the property and assets of the Loan Association, and to impress a lien upon the property in favor of the stockholders. The remedy is a common one, and well within the scope of the relief grantable under the pleadings. Erie R. Co. v. Dial, 140 Fed. 689, 691, 72 C. C. A. 183; Jones v. Missouri-Edison Electric Co., 144 Fed. 765, 778, 75

C. C. A. 631; Smith v. Township of Au Gres, Mich., 150 Fed. 257, 261, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876.

But, for the reasons hereinbefore stated, mandamus will be denied.