## Case No. 12,586.

SEARLES et al. v. JACKSONVILLE, P. & M. R. CO. et al.

[2 Woods, 621.] [1]

Circuit Court, N. D. Florida. July 2 and Sept. 25, 1873.

JUDGES — GRANTING INJUNCTIONS — MORTGAGES — RIGHT TO REDEEM — PLEADING IN EQUITY — PARTIES.

1. A justice of the supreme court, prior to the "Act to Further the Administration of Justice," of June 1, 1872.—Rev. St. § 719 [17 Stat. 196], —could grant an injunction at any place, in or out of the circuit in which the suit was instituted.

2. By the seventh section of that act, it is provided that no justice of the supreme court shall grant injunctions except within the circuit to which he is allotted, and in causes pending therein, or in such causes at such place outside of the circuit as the parties may, in writing, stipulate, except in causes where such application cannot be heard by the circuit or district judge.

[Cited in Anderson v. Jacksonville. P. & M. R. Co., Case No. 358.]

3. As the circuit or district judge cannot hear the application when absent from the circuit, the case is then within the exception of the statute as well as when they cannot hear it for any other cause; and the supreme court justice may hear the application at any place where he may be.

4. Where a first mortgage has been foreclosed, and a decree of sale made and execution issued accordingly, a second mortgagee, not made a party to the suit, cannot have an injunction to restrain the sale, as his rights are unaffected.

5. Such second mortgagee may, at any time, redeem the mortgaged premises by tendering the amount due on the first mortgage. If only interest were due, he might redeem by tendering the amount of such interest.

6. A complainant cannot be compelled to add new parties to his bill, if he chooses to take the responsibility of their not being made parties.

[Cited in Re Printup, 87 Ala. 148, 6 South. 419. Cited in brief in Harper v. Union Manuf'g Co., 100 Ill. 229.]

7. When a defendant does not reside in the state where the suit is brought, but is served with process there, he may plead the matter in abatement. If he does not plead it in abatement, he cannot set it up afterwards.

8. The court will not appoint a receiver of property which is in the possession of a person not a party to the suit.

9. An injunction to prevent a sale under execution will not be granted to a person who was not a party to the decree, unless he can show that his rights will be directly affected by the sale. Thus, where property has been sold under a first mortgage by a statutory proceeding, and the purchasers fail to pay the price of sale, although they have obtained a deed for, and possession of the property, and a bill is filed on the vendor's lien to compel payment of the balance, and a decree is obtained to that effect, and execution issued, a second mortgagee cannot have an injunction to prevent the sale, his rights being extinguished by the statutory sale.

10. Effect of proceedings under the Florida internal improvement act of January 6, 1855.

[This was a bill in equity by James E. Searles and others against the Jacksonville, Pensacola & Mobile Railroad Company and others.]

Heard upon application for injunction July 2, 1873, before BRADLEY, Circuit Justice, at chambers, in Washington, upon notice duly given.

A. D. Basnett, for the motion.

H. R. Jackson, contra.

BRADLEY, Circuit Justice. On the 2d of July, 1873, counsel for the parties in this case, E. C. Anderson and others, appeared before me at chambers in Washington, D. C., pursuant to a notice served on Mr. Jackson as solicitor of the said E. C. Anderson and others, complainants in another suit in this court; which notice was to the effect that the complainant had filed his bill, and would apply to me, as associate justice of the supreme court, for an injunction to stay the sale of the Pensacola & Georgia Railroad, which had been levied on by the marshal and advertised for sale under a decree in the said suit of E. C. Anderson and others.

It was objected by the defendants' counsel that the motion could not be entertained at this place by reason of the express prohibition contained in the seventh section of the "Act to Further the Administration of Justice," approved June 1, 1872. By the proviso of the section referred to, it is declared that no justice of the supreme court shall hear or allow any application for an injunction or restraining order, except within the circuit to which he is allotted, or at such place outside of the circuit as the parties may, in writing, stipulate, except in causes where such application

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

cannot be heard by the circuit judge of the circuit or the district judge of the district. The complainants met the objection by alleging that the application could not be heard by the circuit or district judge; that the district judge was in New Jersey, too ill to go to Florida to hear it, and that the circuit judge had left the circuit and could not be communicated with. Sufficient evidence of the district judge's illness and absence was laid before me, and I was satisfied from correspondence with the circuit judge that he had left the circuit, and could not be communicated with. But the counsel for the defendants contended that the disability on the part of the circuit and district judges to hear the application, intended by the statute, was something more than absence or sickness; that it meant an interest in the cause, or some other ground of disqualification by which they were incapacitated to hear the application. On reflection, I think that this would be too narrow a construction; that the convenience of suitors and the exigencies of justice require a liberal construction of the clause, such as would enable parties to apply to a judge of the supreme court when, for any reason, they cannot present their application to the circuit judge nor to the district judge. The object of the exception in the proviso is to prevent a failure of justice; and such a failure would as effectually ensue when the inability of the local judges to hear the application arose from one cause as when it arose from another. It is literally true that they cannot hear such applications when outside of their circuits; whereas, the supreme court judges can hear them anywhere in the United States, or, at least, could do so prior to this statute; and the question is, how far the statute prevents them from doing so now. I think it does not prevent them where the parties cannot, for any cause, present their application to the circuit nor to the district judge. I feel bound, therefore, to entertain the application.[2]

But it seems to me that, in this case, there is no ground whatever for an injunction. The defendant E. C. Anderson, and others, held certain first mortgage bonds of the railroad company. The property was sold under the lien of these bonds by virtue of a statutory proceeding, and the purchasers failed to pay the whole of the purchase money. Anderson and others filed a bill to compel payment and set up the equity of the vendor's lien for a resale of the property. A decree was had and execution issued for this purpose. The complainant holds a number of the second mortgage bonds of the same company, and was not made a party to the suit of Anderson & Co. He filed this bill for an injunction to prohibit the sale. But as he was not a party to the Anderson suit, he cannot be injured by the decree or sale therein. One of his allegations is that the principal of the first mortgage bonds is not due, and that the holders of the second mortgage bonds, as next incumbrancers, ought to have the privilege of redeeming the property, and getting possession of the same, by paying the arrears of interest. But he made no offer to redeem and nothing can be claimed on this ground. The complainant makes various charges of fraud against persons dealing with the property of the company and with its bonds; but he does not show

---

[2] The following are notes of an opinion prepared by Mr. Circuit Justice Bradley, in another case, prior to the act of 1872, on the power of a justice of the supreme court to hear an application for an injunction outside of the limits of his circuit:

"On this question I never had any doubt. It is to be considered irrespective of the recent creation of circuit judges, and as matters stood when the courts were originally organized. The general jurisdiction of the justices of the supreme court was then regarded as coextensive with the territory of the United States. Prior to the act of April 29, 1802 [2 Stat. 156], there was no allotment of justices to particular circuits. They held the several circuits in rotation, and, at first, two justices went the circuit together. All of them were, in law, judges of all the circuit courts. The mere circumstance of allotment could not affect their general powers, at least as regards cases in their own circuits. As the circuit courts were courts of equity as well as of law, the issuing of injunctions was part of their jurisdiction, and these must often have been issued, and other ex parte orders made in vacation. The justices of the supreme court must have exercised these powers. But it was impossible that there should have been such jus-

tices always present in every circuit, much less in every district. Twice a year, at least, they were required to hold sessions of the supreme court at the seat of government; and consequently, they could then be only in one district of the whole thirteen. And absence from a district would have been no less effectual than absence from the circuit in depriving them of jurisdiction over a case pending in the district; for the circuit courts are courts in and for particular districts, and not for the whole circuit. Orders in course were undoubtedly made by the district judges as assistant judges of the circuit courts; but these judges were not authorized to issue injunctions in said courts until the passage of Act Feb. 13, 1807 [2 Stat. 418]. As a matter of necessity, therefore, the justices of the supreme court must have issued injunctions outside of the territorial jurisdictions of the circuit courts in which the cases were pending, unless we adopt the improbable conclusion that they transacted no chamber business in equity whatever, except when they happened to be actually present in the particular district as well as the particular circuit in which the case was pending. It is true that the fourteenth section of the judiciary act [1 Stat. 81], in conferring express power to issue writs, confers it upon the courts and not upon the judges: but, under proper circumstances, the judges exercise the power as incidental to their office. It is the power of the court which they, as its officers, exercise, in the only way in which the power can be exercised in vacation. But whatever doubt may have ever existed on the subject was put at rest by Act March 2, 1793, § 5 [Id. 333], which expressly declared that writs of ne exeat and of injunction might be granted by any judge of the supreme court in cases where they might be granted by the supreme or circuit courts; but that no writ should be granted to stay proceedings in any court of a state, nor in any case without reasonable notice to the adverse party, or his attorney, of the time and place of moving for the same. Under this law the justices have ever since continued to act, and very little practical inconvenience has ensued."

that E. C. Anderson and others who obtained the decree in the former case have been guilty of fraud, or that they are demanding anything but their honest due.

I cannot see any ground for an injunction as prayed, nor how the complainant can be injured by a sale under a decree to which he or those whom he represents were not parties. Application denied.

The above case came on again before BRADLEY, Circuit Justice, September 25, 1873, on an amended bill and further affidavits and answers of the defendants, and an injunction was applied for.

Mr. Jackson moved that the Florida Central Railroad Company be made a party to the suit. This motion, being objected to by the counsel for the complainant, was denied; the circuit justice holding that a complainant cannot be compelled to add parties to his bill, if he choose to take the responsibility of their not being parties.

Mr. Davis filed a plea in abatement for Holland, one of the defendants, on the ground that he was not a citizen of Florida, when the bill was filed, and was not then a citizen of Florida, but a citizen of Georgia. This plea was allowed. the circuit justice holding that by the eleventh section of the judiciary act, which confers jurisdiction upon the circuit court in cases between citizens of different states, the said jurisdiction was limited to suits between a citizen of the state where the suit is brought and a citizen of another state, and that no subsequent statute had enlarged this branch of jurisdiction; but that when a defendant, being served with process or appearing in a suit, fails to plead the matter in abatement, he cannot set it up at a subsequent stage of the proceedings, if all proper jurisdictional allegations are made in the bill or declaration; that the act of 1839,—Rev. St. § 737 [5 Stat. 321],—allowing publication in proceedings on liens against specific property, only put the case in the same condition as if the absent defendant had appeared, but in no better condition.

It appeared from the pleadings and evidence, that D. P. Holland was in possession of the railroad in controversy as purchaser under a judgment in his own favor rendered in this court. As he pleaded in abatement and was no longer a party defendant in the suit, the circuit justice held that no receiver could be appointed to oust his possession. The application for the appointment of a receiver, therefore, was overruled. The circuit justice further held that unless the hearing was had by consent of the parties, he would not appoint a receiver at his chambers in Washington except as incidental to the granting of an injunction; that when parties in possession are enjoined from further intermeddling with property, the appointment of a receiver was often necessary to take care of and preserve it, and such appointment would be made as incidental to the injunction.

W. Call, for the motion for injunction.

H. R. Jackson, J. P. C. Emmons, T. W. Brevard, W. G. M. Davis, and H. Bisbee, Jr., contra.

BRADLEY, Circuit Justice. The only question remaining is, whether an injunction should issue to prevent a sale by the marshal under the decree and execution of E. C. Anderson & Co. That decree was based on first mortgage bonds; the complainant holds and represents second mortgage bonds, and was not, nor was any other person representing the latter bonds, made a party to Anderson's suit. This suit, however, was not a foreclosure suit. The circumstances were peculiar and somewhat complicated. The first mortgage bonds had been issued under the internal improvement act of the state of Florida, passed January 6, 1855, and had been guarantied by the governor and other state officers as trustees of said fund under said act. By the 3d section of the act, it was provided that all railroad bonds issued under. it should be a first lien on the railroad, its equipment and franchise, and on failure of the railroad company to provide and pay the interest, and one per cent. per annum for sinking fund, it should be the duty of the trustees, after thirty days from default, to take possession of the road and property, and advertise and sell it to the highest bidder, and apply the proceeds to purchasing and canceling outstanding bonds of the company, or incorporate them with the sinking fund. Such a seizure and sale of the railroad and property in question was made by the trustees on the 20th of March, 1869, and the amount of sale was sufficient to retire the bonds of the company, and about a million of dollars of the bonds were retired. But the purchasers. whilst managing to get a deed for the property, evaded or failed to pay more than four hundred thousand dollars of the purchase money, and the bonds of E. C. Anderson & Co. to that amount were never paid. Their bill was filed, therefore. on the equity of the vendor's lien, against the present holders of the property (who had organized as the Jacksonville, Pensacola & Mobile Railroad Company, and were charged with notice), and against the trustees of the internal improvement fund, to compel payment of the balance of the purchase money out of the property purchased, and to procure a decree for its appropriation to the payment of these unpaid bonds. The bill of Anderson & Co. did not repudiate the sale made by the trustees, but affirmed it, and sought to recover and appropriate the balance of the proceeds arising. or that ought to have arisen from that sale.

It is apparent from this statement, that if the sale made by the trustees was valid, the second mortgage bondholders, and all other parties holding interests subsequent to the first mortgage bonds. had no longer any interest whatever in the property. The sale under the statute made a clear and absolute title except as against the vendor's lien. It is contended

that the sale was illegal, because the road was not completed; and by the twelfth section of the internal improvement act, until the road is completed, no payments are due on the sinking fund, and no delinquency for that cause can occur. But, although the road had not been constructed on the entire length of line or route projected and authorized by its charter, yet the company had stopped construction at Quincy, and the road seems to have been mutually regarded by the company and the trustees as a completed road to that point. Besides, the interest was largely in arrear, and the trustees had advanced interest to a considerable amount. There is no sufficient proof before me to show that the sale was prematurely made by the trustees, and I should be very unwilling to decide that point on a preliminary hearing. I do not think that a sufficient case is made by the complainant to justify me in granting the injunction sought.

The motion is denied, with costs.