UNITED STATES v. GOLDSTEIN et al.

(Circuit Court of Appeals, Eighth Circuit. January 14, 1921.)

No. 5427.

1. **Judges ⊙═30—Federal judge may hear application to modify decree while sitting in another district.**

A federal District Judge, who heard a cause and entered a decree while setting by assignment in another district, *held* to have power to hear and determine a motion for modification of such decree while sitting in his own district, and the modified decree as determined by him when entered in the district of trial by the judge of that district in open court *held* valid and effective.

2. **Courts ⊙═354—Decree should not include findings of fact.**

Under equity rule 71 (33 Sup. Ct. xxxviii) it is proper to include findings of fact in a decree only when necessary to make the decree more clear and specific.

3. **Equity ⊙═429—Error in decree may be corrected after term.**

Where a decree canceling a certificate of naturalization as having been obtained by fraud included a finding of fact that the witnesses for the applicant, who were not parties and had no knowledge of the suit, had knowingly testified falsely, the court *held* to have power at any time thereafter on application of such witnesses to correct its decree by expunging such finding.

4. **Depositions ⊙═56(1)—Insufficiency of notice not ground for suppression, where counsel appeared.**

A deposition *held* properly received in evidence, where, though notice of its taking was short, counsel for the adverse party appeared, but refused to cross-examine after his objection on the ground of insufficiency of notice was overruled.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Suit in equity by the United States against Shloen Layzor Evel Yokovich Klubok, alias Sall Glubok. On appeal by complainant from modification of decree on motion of Nat A. Goldstein and William Sacks. Modified and affirmed.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On January 2, 1914, the United States of America filed its bill in equity in the District Court of the United States within and for the Eastern Division of the Eastern Judicial District of Missouri, under section 15 of the act of Congress of June 29, 1906 (Comp. St. § 4374), against Shloen Layzor Evel Yokovich Klubok, alias Sall Glubok, by which the government sought and prayed the cancellation of the letters of citizenship granted to said Glubok by the said United States District Court for the division and district last aforesaid on the 7th day of October, 1910. In its bill the government alleged and charged, among other things, that said Klubok had fraudulently and illegally obtained and procured entry of the said decree or letters admitting him to American citizenship by reason of fraud, perjury, deceit, and imposition committed and practiced upon the court by him and his verifying witnesses, Nat A. Goldstein and William Sacks, appellees in this matter, in this, to wit: That the said petitioner had falsely and fraudulently represented himself to be a man of good moral character, and to be fully qualified to be admitted to American citizenship, and that the said witnesses, Nat A. Goldstein, and William Sacks, had been guilty of the commission of fraud, deceit, and imposition on the court, in falsely asserting and stating under oath, in the affidavit executed by them as part of the petition for naturalization of said Glubok, that they knew of their own personal knowledge that said petitioner was a man of good moral character, and had conducted and behaved himself as such for the period of time requisite under the naturalization statute, and that he was in all respects qualified and eligible to be admitted a citizen of the United States of America, and that said witnesses had further been guilty of the commission of fraud, deceit, and imposition on the court in falsely and fraudulently representing and testifying in open court on the final hearing on said petition for naturalization of said Glubok that they of their own personal knowledge knew said petitioner to be a man of good moral character, and to have conducted and behaved himself as such, as required by the naturalization statute, and that they knew him to be in all respects qualified and eligible to be admitted to American citizenship.

The bill of complaint then alleged further that in truth and in fact the said Klubok was not a man of good moral character, and had not conducted or behaved himself as such, as required by the statute in such matter made and provided, and that the affidavits executed by said witnesses, in which they stated that they knew of their own personal knowledge that the petitioner for naturalization was a man of good moral character and had conducted and behaved himself as such was false and untrue, and that the testimony of said witnesses, given under oath in open court on the final hearing on the petition for naturalization of the petitioner, in which said witnesses had falsely and fraudulently represented that they of their own personal knowledge knew the petitioner for naturalization Glubok, to be a man of good moral character, and to have behaved and conducted himself as such for the requisite period of time as demanded by the naturalization statute, was false and untrue, and that in truth and in fact the said Glubok, for a considerable period of time previous to his naturalization, had lived with and off the illegitimate earnings of his wife, Annie Glubok, alias Lizzie Greenstein, who during all of said time had been a common prostitute and keeper of houses of prostitution at various addresses in the city of St. Louis, Mo. The affidavits attached to and forming part of the said bill of complaint, executed by various officers of the metropolitan police department of the city of St. Louis, Mo., as well as others established the fact of the bad moral character of the said petitioner for naturalization Glubok as alleged in the government's bill.

On February 26, 1914, the defendant Glubok filed a joint plea and answer to the bill of complaint, in which he alleged and claimed compliance with the statutory requirements in obtaining grant of the letters of citizenship, and denied that he or his verifying witnesses had been guilty of any fraud, deception, or perjury in obtaining the entry of said decree or letters of citizenship. The cause was heard by Judge Pollock of the district of Kansas, who had been duly assigned to the District Court for the Eastern District of Missouri. On June 16, 1915, the defendant failing to appear, the case was heard and submitted to the court upon the petition of the plaintiff, the answer

of the defendant, and the proofs adduced. On the 18th day of June, 1915, two days subsequent to the date of the hearing and submission, a final decree was entered in favor of the plaintiff, the United States of America, which is as follows:

"This cause coming on to be heard.on the 16th day of June, A. D. 1915,· the United States appearing by its District Attorney, and the defendants being in default, and the court being fully advised in the premises, finds: That a bill in equity in the above-entitled cause was filed in this court on January 2, 1914; that a subpœna duly issued was served on said defendant January 7, 1914; that on February 26, 1914, defendant filed plea and answer in said cause; and that on June 15, 1915, by leave of the court, defendant's counsel withdrew from the case, said defendant having fled the jurisdiction of the court.

"The court further finds that the subject-matter of this action is a decree of the United States Circuit Court for the Eastern Division of the Eastern Judicial District of Missouri; that the defendant at the time of the institution of this suit, was a resident of St. Louis, Mo., within the Eastern Division of the Eastern Judicial District of Missouri; and that on July 1, 1910, said defendant, under the alias of Sall Glubok, filed petition·for naturalization No. 883 in the aforesaid United States Circuit Court for the Eastern Division of the Eastern Judicial District of Missouri, and was by said court on said petition naturalized a citizen of the United States on October 7, 1910, certificate of naturalization No. 148771 being issued to him as documentary proof of such naturalization.

"The court further finds that the naturalization of the said defendant was granted on the testimony of Nat A. Goldstein and William Sacks, who declared on their oaths that to their personal knowledge said defendant was a man of good moral character, etc., and a proper person to be naturalized a citizen of the United States.

"The court further finds that the naturalization of the said defendant was a fraud upon the court, and upon the United States, in that the testimony of said Nat A. Goldstein and William Sacks that defendant was a man of good moral character to their personal knowledge, was false, and contrary to the facts; that said defendant petitioned for and secured naturalization under a fictitious and assumed name, to wit, Sall Glubok, and not under his true name, to wit, Shloen Layzor Evel Yokovich Glubok; that said defendant named in his petition for naturalization, one Anna Glubok, as his wife with whom he was living in lawful wedlock; that said Anna Glubok was one Lizzie Greenstein, a public prostitute and keeper of houses of prostitution; that said defendant shared in and derived profit from the prostitution of said Lizzie Greenstein; that said defendant had shared in and derived profit from the prostitution of said Lizzie Greenstein for many years prior to his naturalization; and that said defendant committed a further fraud upon this court, and the United States, ·through reciting in his petition that he had two children, to wit, Isidore, ·born April 10, 1905, at New York, N. Y., and Sam, born May 23, 1906, at Grodna, Russia, when as a matter of fact said children were born some six or seven years prior to the dates given, and both were born in Russia, and neither in the United States.

"That for the reasons hereinbefore set forth, the court finds that the qualifications and right of said defendant to become a citizen of the United States were not proved or made to appear to the court in any true or lawful manner; that said decree of naturalization was procured by and based on false and fraudulent testimony, misrepresentation and deceit; that the court was induced to render said decree of naturalization by and through mistake as to the true facts, as well as by the fraud, perjury, imposition, and deceit practiced upon it by said defendant, and his witnesses; and that by reason thereof a fraud was committed by said defendant upon the court, and the United States; said defendant unlawfully and fraudulently obtaining said decree naturalizing him, and conferring the status of a citizen of the United States upon the said prostitute, Lizzie Greenstein, and children, Isidore and Sam.

"It is therefore by the court ordered and decreed that the decree of said United States Circuit Court for the Eastern Division of the Eastern Judicial

District of Missouri, entered October 7, 1910, admitting said defendant to citizenship, be and the same is hereby vacated, set aside, and held for naught, and that the said certificate of naturalization No. 148771 be and the same is hereby revoked and canceled; that said defendant is hereby directed and required to surrender to this court for cancellation said certificate No. 148771: and the said defendant be and he is hereby forever enjoined and restrained from claiming any rights, privileges, or immunities under said order of naturalization and said certificate of naturalization.

"It is further ordered that the clerk of this court shall send a certified copy of the foregoing decree to the Commissioner of Naturalization, Department of Labor, at Washington, D. C., accompanied by the canceled certificate of naturalization of said defendant (in the event said certificate is recovered), and that said defendant pay the costs of this proceeding, for which let execution issue as at law."

On the 19th day of September, 1918, three years and three months subsequent to the entry of said final decree, Nat A. Goldstein, one of the verifying witnesses in the naturalization proceedings, as well as one of the appellees in this proceeding, filed in the said District Court, a motion for the vacation and reopening of the final decree and the amendment, modification, or correction of the judicial findings therein, in which motion the said Goldstein sought and prayed that the judicial findings in said final decree adjudging and finding him guilty of the commission of fraud, perjury, deceit and imposition on the court in the naturalization proceedings, as heretofore set forth, be eliminated and expunged from said final decree, and that the court judicially find as a matter of law and fact, and embody such judicial findings in a new decree, that he, the said Goldstein, was honestly mistaken in swearing in the affidavit executed by him as part of the naturalization proceedings that he had personal knowledge of the good moral character of the said petitioner for naturalization as well as in testifying in open court on the final hearing on said petition for naturalization, that he knew of his own personal knowledge that the said petitioner, Glubok, was a man of good moral character, and was fully qualified in all respects to be admitted a citizen of the United States of America.

Notice of the application to be made to Judge Pollock on September 21, 1918, at Kansas City, Kan., was duly served on the District Attorney for the Eastern District of Missouri and the Chief Naturalization Examiner of the United States. On that day the parties appeared before Judge Pollock at Kansas City, Kan., and on motion of the solicitors for appellant the hearing was continued until September 26, 1918, at Wichita, Kan., in order to give them an opportunity for investigation of the facts. No objections were made by appellant at that time. At the hearing at Wichita, the United States for the first time objected to the jurisdiction of Judge Pollock to hear the motion in Kansas, and also upon the ground that the decree sought to be corrected had been rendered and entered more than three years before the filing of the petitions. The objections were overruled and exceptions saved.

At the hearing the appellees offered to read the depositions of Edward F. Fisher, Harry Chosid, Robert L. Cole, Peter McGauley, William A. Sievers, Frank J. Kraus, Frank Dempsey, Louis W. Deppe, John F. Frey, May Littman, William H. Tabacius, Edward H. Miller, Albert D. Ulrich, Joseph Baer, Henry Kaiser, Vance J. Higgs, Thomas Symon, Gustave Cytron, William D. Killoven. Albert Strangler, and the appellee Sacks. Objections to the reading of the depositions were made by the appellant, upon the ground that the witnesses, whose depositions were taken, were all residents of the Eastern District of Missouri, and that the notices given were too short.

The notices for the taking of the depositions of the witnesses were served on the day they were taken. The United States did not appear when the depositions of the witnesses were taken, except at the taking of appellee Sacks' deposition, when objections were made by them to the taking of Mr. Sacks' deposition, upon the ground that, the term at which the decree had been rendered having expired more than three years, the court was without jurisdiction to correct it, and that the notice served was insufficient. The commissioner, before whom the depositions were to be taken, very properly held that these objections should be determined by the court when the depositions

were offered to be read at the hearing and therefore overruled them. The solicitors for appellant thereupon withdrew and Mr. Sacks' deposition was taken ex parte.

The deposition of Sacks shows that he is a resident of Tulsa, Okl., which is out of the Eastern District of Missouri, and more than 100 miles from St. Louis, where the cause was pending and more than 100 miles from Wichita, Kan., where the motion was to be heard by Judge Pollock.

The appellee Goldstein testified orally at the hearing in Wichita, Kan. The objections to the reading of the depositions were overruled, and after they were read, and the appellant Goldstein had testified, the court prepared the following decree:

"Now, on this 30th day of September, 1918, comes on for final order and decision herein the application of Nat A. Goldstein and William L. Sacks to expunge from, modify, and correct certain language contained in the final decree filed and entered herein on the 18th day of June, 1915, in so far only as the language thereof is asserted to work a wrong and injustice to the reputation and good name of the applicants for this order, contrary to the very truth of the matter, leaving, however, said decree to be and remain standing of record in full force and effect in all respects and every particular as to the rights of the parties therein decreed as fully, to the same effect and intent as though no such correction in verbiage of said decree had been applied for or granted. * * *

"It is therefore by the court ordered and decreed that the decree of said United States Circuit Court for the Eastern Division of the Eastern Judicial District of Missouri, entered October 7, 1910, admitting said defendant to citizenship, be and the same is hereby vacated, set aside, and held for naught, and that the said certificate of naturalization No. 148771 be and the same is hereby revoked and canceled; that said defendant is hereby directed and required to surrender to this court for cancellation said certificate No. 148771; and the said defendant be and he is hereby forever enjoined and restrained from claiming any rights, privileges, and immunities under said order of naturalization and said certificate of naturalization.

"It is further ordered that the clerk of this court shall send a certified copy of the foregoing decree to the Commissioner of Naturalization, Department of Labor, at Washington, D. C., accompanied by the canceled certificate of naturalization of said defendant (in the event said certificate is recovered), and that said defendant pay the costs of this proceeding, for which let execution issue as at law."

And the court also inserted findings of fact, exonerating appellees from having knowingly testified falsely, as recited in the original decree. The decree was signed by Judge Pollock and sent to Judge Dyer, the District Judge for the Eastern District of Missouri, and by him ordered to be entered as the decree of the court, while the court was in session, and he presiding.

The assignment of errors raises the following issues of law, the findings of fact not being questioned:

(1) That Judge Pollock was without jurisdiction to hear the motion in the state of Kansas.

(2) That the court was without jurisdiction to correct the decree, rendered more than three years before the filing of the motion to correct it.

(3) That the court erred in overruling appellant's objections to the reading of the depositions taken on behalf of appellee.

James E. Carroll, U. S. Atty., W. L. Hensley, former U. S. Atty., and N. C. Whaley, Asst. U. S. Atty., all of St. Louis, Mo.

C. C. Madison, of Kansas City, Mo., and Selden P. Spencer and Forrest C. Donnell, both of St. Louis, Mo., for appellees.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). We will dispose of the questions in the order in which they were assigned by appellant in the assignment of error.

[1] The first question to be determined is: Is the decree appealed from void, for the reason that the hearing was had in the state of Kansas, although the decree was entered in the proper District Court, while in session?

The acts of Congress treat the divisions of a district, unless otherwise provided, as separate districts for jurisdictional purposes. Section 53, Judicial Code (Comp. St. § 1035); Bankruptcy Act, secs. 18f and 18g (Comp. St. § 9602). It has been held that an order granting a new trial, by the District Judge, while in another division than where the trial and conviction were had, was within his jurisdiction. Abbott v. Brown, 241 U. S. 606, 36 Sup. Ct. 689, 60 L. Ed. 1199. The facts in that case were: Abbott had been indicted in the District Court for the Southern District of Florida, held at Tampa, Fla., for a violation of the Penal Code (Comp. St. §§ 10165–10519); that being the place for the court of one of the six divisions of that district. In the month of March, 1912, he was tried on the indictment, found guilty, and a sentence of imprisonment imposed. May 24, 1912, he filed a motion for new trial. On June 26, 1912, the motion was heard by Judge Locke, at Jacksonville, in the same district, but in another division, and the motion granted. The order of Judge Locke, granting the new trial was forwarded to and entered by the clerk at Tampa, while the judge was absent, under a rule of the court requiring the court to be held open. He was again tried at Tampa on February 11, 1913, when the jury disagreed. On March 13, 1914, he was again tried, and the jury returned a verdict of not guilty. In February, 1915, he was indicted for subornation of perjury. He demurred to this indictment, and moved to quash it, upon the ground that Judge Locke had no jurisdiction to grant the new trial. One of the grounds relied on was that the new trial had been granted out of the division in which the cause was pending and the order entered while that court was not in session; the judge not being present. The demurrer and motion to quash were heard by the then presiding judge, the successor of Judge Locke, who sustained the demurrer and quashed the indictment, upon the ground that Judge Locke had no power or authority, after the adjournment order of March 12, 1912, to vacate or set aside the sentence passed upon the appellant on that date, and when out of the division of the district. Thereupon the United States Attorney procured a commitment to be issued on the original judgment of conviction, and while held in custody under this commitment the appellant applied for a writ of habeas corpus. The trial judge discharged the writ, whereupon the cause was appealed to the Supreme Court. The judgment of the lower court, refusing to discharge the petitioner on habeas corpus, was reversed, the court holding that—

"The judgment of conviction having been vacated by an order of the court made within the scope of its power and jurisdiction, there remains no legal foundation for the commitment issued on March 20, 1915, and the appellant is entitled to be discharged from custody."

In United States v. Louisville & P. Canal Co., Fed. Cas. No. 15,633, Mr. Justice Miller, sitting as Circuit Justice, held that, notwithstanding section 719, Rev. St. (re-enacted as section 264 of the Judicial Code

[Comp. St. § 1241]), provided, "But no Justice of the Supreme Court shall hear or allow any application for an injunction or restraining order in any cause pending in the circuit to which he is allotted, elsewhere than within such circuit, or at such place outside of the same as the parties may stipulate in writing, except when it cannot be heard by the Circuit Judge of the circuit or the District Judge of the district," when the District Judge of the district and the Circuit Judge for the circuit and the Justice of the Supreme Court allotted to that circuit are absent from the district and circuit, any Justice of the Supreme Court has jurisdiction, at any place in the United States, to hear and grant an application for an injunction. In Searles v. Jacksonville, P. & M. R. R., 2 Woods, 621, Fed. Cas. No. 12,586, Mr. Justice Bradley, sitting as Circuit Justice, held that, notwithstanding the provisions of section 719, Rev. St., a Circuit Justice may grant a temporary injunction when the District and Circuit Judges of the district and circuit are disqualified or out of the district and circuit, at any place where he may be, although out of the circuit, and against the objections of the defendants. See, also, United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890.

Aside from this, the order correcting the decree made by Judge Pollock was entered by Judge Dyer, the regular presiding judge of the court in which the original decree had been rendered, thereby making it his decree, based on information from Judge Pollock, which was satisfactory to him.

It is also proper to state in this connection that, when the motion was first presented to Judge Pollock, at Kansas City, Kan., no objection to his hearing it in the state of Kansas was made by the solicitors for appellant. The first time this objection was made was when the hearing had been continued and was had at Wichita, Kan., the continuance having been granted at the request of the solicitors of the appellant, upon the ground that they had not had sufficient time to prepare for the hearing.

We are of the opinion that no error was committed in overruling the objection to the hearing of the motion by Judge Pollock in the state of Kansas.

[2, 3] 2. Did the court err in acting on the motion after the expiration of the term at which the decree sought to be modified was rendered?

The only modification of the decree sought and granted was to expunge the findings of fact included in the decree, reflecting on appellees. They were not parties to that action, were not present at the hearing, and did not know of these findings until a few days before they filed their motions. They first learned of it by publication in a newspaper and within a few days thereafter filed their motions. They certainly cannot be said to have been guilty of a lack of diligence. Not having been parties to that action, they were not chargeable, with constructive notice of the contents of the decree. Findings of fact have no place in a decree in a national court. Rule 71 of the present Equity Rules (33 Sup. Ct. xxxviii), a re-enactment of rule 86 of the former Equity Rules, promulgated March 2, 1842, prescribed the form for decrees,

and although it does not in express terms prohibit the inclusion of findings of fact in the decree, it does so by necessary implication. Only, if it is necessary to make the decree more clear and specific, is it proper to include findings of fact in the decree. Putnam v. Day, 89 U. S. (22 Wall.) 60, 22 L. Ed. 764; McClaskey v. Barr (C. C.) 48 Fed. 130. There was no necessity for that in this decree.

The findings complained of in effect found appellees guilty of having willfully and knowingly sworn falsely, when they were neither parties to the action to set aside the order granting naturalization to the defendant in that case, nor present at the hearing, and therefore without an opportunity to defend themselves against so serious an imputation made in a solemn decree of a superior court.

The law is well settled that a court may correct its judgment after the expiration of the term at which it was rendered, if it was without jurisdiction, in excess of jurisdiction, erroneous on face of it, or improper by reason of doing injustice. Farmers' & Merchants' Bank v. Arizona Mutual S. & L. Ass'n, 220 Fed. 1, 135 C. C. A. 577; In re Dennett, 221 Fed. 350, 136 C. C. A. 422; Sweeney v. State, 35 Ark. 585.

A judgment upon a matter not within the pleadings and not litigated is void, being contrary to fundamental principles of justice. Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464; Coe v. Armour Fertilizer Works, 237 U. S. 413, 426, 35 Sup. Ct. 625, 59 L. Ed. 1027. "A decree has to be founded on the allegata as well as probata of the case." Putnam v. Day, 89 U. S. (22 Wall.) 60, 66 (22 L. Ed. 764); Hendryx v. Perkins, 114 Fed. 801, 806, 52 C. C. A. 435. If the error in the decree is within the recollection of the judge who presided at the trial, the correction may be without notice. In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865; Odell v. Reynolds, 70 Fed. 656, 17 C. C. A. 317; Groton Bridge & Mfg. Co. v. Clark Pressed Brick Co., 136 Fed. 27, 68 C. C. A. 557, affirming s. c. (C. C.) 126 Fed. 552.

The decree went beyond the relief asked by the plaintiff in that case, was highly prejudicial to appellees, who were not before the court, and it was the duty of the court to correct it in justice to the parties thus wronged. Brinkerhoff v. Franklin, 21 N. J. Eq. 334; Black on Judgments, § 161. In the decree appealed from, the learned trial judge again included his findings exonerating appellees from the imputations cast on them in the original decree. While this should not have been done, the learned trial judge, no doubt, felt that as the former decree contained these reflections on the petitioners, the corrected decree rectifying this error, should also appear on the records of the court.

We are of the opinion that, in neither decree should the findings of fact have been included, but in justice to the appellees it was proper for the court to make the findings it did and make these findings a part of the record of the cause, by placing them among the files of the cause, instead of including them in the decree.

[4] 3. Did the court err in admitting the depositions of witnesses read on behalf of appellees at the hearing?

Whether in a proceeding of this nature depositions are to be taken under section 863, Rev. St. (Comp. St. § 1472), in order to be admissible, or whether ex parte affidavits, with an opportunity to the adverse party to controvert them by counter affidavits, would be admissible, it is not necessary to determine in this case; nor do we deem it necessary to decide in this case whether the depositions of the witnesses residing within the Eastern District of Missouri, but more than 100 miles from Wichita, Kan., where the hearing was to be had, were improperly permitted to be read at the hearing, for, disregarding all the depositions except that of the appellee Sacks, there was substantial evidence to warrant the findings made by the court, and therefore their admission could not, by any possibility, be prejudicial to appellant.

The deposition of Mr. Sacks was properly admitted. He was neither a resident of the Eastern District of Missouri, nor of the District of Kansas, and resided more than 100 miles from the court in which the proceedings were pending, and the place of the hearing. While the time given by the notice to take his deposition was rather short, still, as the hearing was set for September 26th, in order to have the deposition at the hearing, they had to be taken, not later than September 24th. Mr. Sacks, who resided at Tulsa, Okl., first learned of the contents of the decree on September 23d, while he was in St. Louis on some business. He immediately filed his petition to expunge so much of the decree as reflected on him, and served notice on the solicitors for appellant that his deposition would be taken the next day.

Counsel for appellant appeared before the commissioner who was to take the depositions, objected to his taking them, and when the objections were overruled they refused to remain and cross-examine him. There is no reason why they could not have remained and cross-examined the witness, as the cross-examination would be limited to what was testified by the witness on direct examination. This deposition and the oral testimony of appellee Goldstein clearly warranted the findings made. Whether, in view of the fact that, the government is in no wise prejudiced by this decree, as all it asked in its suit against Glubok was to cancel the order granting him naturalization, it had a right to prosecute this appeal, we do not deem it necessary to decide, as no motion to dismiss was made by appellees.

Our conclusion is that the decree entered on October 7, 1918, should be modified, so as to include only the part of the decree, as set out hereinbefore, and omitting all findings of fact. The memorandum opinion prepared by Judge Pollock contains his findings of fact, and is a part of the record of the case, and it removes all imputations on appellees contained in the original decree.

As thus modified, the decree is affirmed.

STONE, Circuit Judge (dissenting). I am compelled to dissent in part on the ground that I think the depositions should have been excluded, because taken upon notice which was insufficient under the existing circumstances. Those circumstances as shown by the record and the notices given are as follows:

A record entry at St. Louis, Mo., in the District Court, signed by

Judge Dyer, the regular judge for that district, shows the filing of the Goldstein motion as of September 19, 1918. The original motion shows service of motion and notice on September 20, 1918, and filing of such motion with attached service on September 23, 1918. September 21, 1918, the Goldstein motion was presented for hearing before Judge Pollock at Kansas City, Kan. At that time and place the government orally applied for a continuance, for the purpose of gaining time to investigate the facts. Thereupon Judge Pollock, by order, continued the hearing until Thursday, September 26, 1918, and set the place of hearing at Wichita, Kan., at 9 a. m.; the court then stating that he would not hear the matter on affidavits, but upon depositions. This order was made Saturday, September 21, 1918, at Kansas City, Kan., about 300 miles from St. Louis, Mo.

The following Monday, September 23d, the United States Attorney, the United States Assistant Attorney in charge of the case, and the Naturalization Examiner at St. Louis were served with notices to take depositions in St. Louis, in support of the Goldstein motion. These notices were served at 11:45 and 11:50 a. m., and were for the depositions of 19 witnesses. The first deposition, William L. Sacks, was set for 1:30 p. m. of the same day, or 1 hour and 45 minutes after the first service of notice. The other 18 depositions were for 8:30 the following morning, or September 24th. On Monday, the 23d of September, the Naturalization Examiner appeared before the commissioner at the time set for the deposition of Sacks. This appearance was on behalf of the United States Attorney and the Assistant United States Attorney in charge, and also of the Naturalization Service. The appearance was expressly limited to the purpose of objecting to the taking of the depositions, and when the commissioner ruled that he had no power to pass upon the objection made, and proceeded with the depositions, the Examiner withdrew and the government declined to participate further. One element of the objection was:

"No modification of said decree can at this time be made by Hon. John C. Pollock. United States District Judge for the District of Kansas, and at this time while he, the said District Judge, is sitting within the jurisdiction and district of the state of Kansas, and not in the Eastern district of Missouri."

Another element was that the notice to take depositions was not given in ample time to enable the government to prepare therefor, and was unreasonably short, having been made, it was claimed, on the Examiner at 12:30 p. m. of that day, only an hour before the time set in the notice, and on the others at 12:35 p. m., less than an hour before such time. The objections were expressly made applicable to the 18 depositions noticed for the following morning at 8:30 o'clock. On September 24th, notices to take 2 other depositions upon that day were served—the first was set for 11 a. m., with service upon the Examiner at 9:10 a. m., and upon the United States Attorneys at 1:45 p. m.; the second was set for 2 p. m., with service on the United States Attorneys at 9:40 a. m. and upon the examiner at 9:50 a. m. The depositions proceeded upon September 23d and 24th and were completed upon those days. On September 24th, Sacks executed, filed, and served his motion for modification of the decree annulling the citizenship of

Glubok, and on that day served notice that the same would be presented to Judge Pollock at Wichita, Kan., on September 26th, at 9 a. m. The hearing was held before Judge Pollock at Wichita, Kan., on September 26th. At this hearing the depositions were offered and objected to on many grounds, including the two above set forth as made when they were taken. Such objections were overruled and the depositions admitted and considered.

A fair summarization of the above facts affecting the depositions is as follows: Goldstein's motion was filed in St. Louis, Mo., Thursday, September 19th; service thereof in St. Louis, Mo., Friday, September 20th; called for hearing before Judge Pollock at Kansas City, Kan., Saturday, September 21st; at that time continued to the next Thursday, September 26th, at Wichita, Kan.; service of notice in St. Louis about noon on Monday, September 23d, for deposition to be taken there at 1:30 o'clock that afternoon; service at the same time for 18 other depositions to be taken the following morning (September 24th) at 8:30 o'clock; service during morning of September 24th, at St. Louis, for two further depositions to be taken two and four hours later; taking of depositions of 21 witnesses under the above notices and on the two days, September 23d and 24th, in St. Louis; hearing of the cause and admission of the depositions at Wichita, Kan., two days later, September 26th. No justifying reasons appear in the record for this haste. I cannot agree that these depositions were taken upon proper notice. Notice implies something more than an opportunity to be present physically, and it is by no means clear that these notices, as to some of the depositions, afforded even that opportunity. In my judgment, the objection to the depositions should have been sustained. The elimination of the depositions would result in complete absence of all testimony as to the applicant Sacks, and leave no basis for the finding in regard to him.

In addition to the depositions, Goldstein testified orally at the hearing, and his testimony afforded sufficient basis for the finding in his favor.